## GOMEZ v. UNITED STATES

No. 88–5014.   Argued April 24, 1989—Decided June 12, 1989*

---

*Together with No. 88–5158, *Chavez-Tesina* v. *United States*, also on certiorari to the same court.

STEVENS, J., delivered the opinion for a unanimous Court.

*Joel B. Rudin* argued the cause for petitioners in both cases. With him on the briefs was *Jerald Levine*.

*Michael K. Kellogg* argued the cause for the United States. On the brief were *Acting Solicitor General Bryson, Assistant Attorney General Dennis*, and *Richard J. Lazarus*.†

JUSTICE STEVENS delivered the opinion of the Court.

Since its enactment in 1968, the Federal Magistrates Act has permitted district courts to assign magistrates certain described powers and duties, as well as "such additional duties as are not inconsistent with the Constitution and laws of

---

†*Burton H. Shostak* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal.

the United States."[1]   The principal question presented is whether presiding at the selection of a jury in a felony trial without the defendant's consent is among those "additional duties."

## I

Petitioners Jose Gomez and Diego Chavez-Tesina were among 11 persons named as defendants in a 21-count indictment alleging commission of multiple felonies, including conspiracy and racketeering, involving distribution of cocaine.[2] Having elected to stand trial, petitioners and three codefendants appeared before the Federal Magistrate to whom the District Judge had delegated the task of selecting a jury.[3] Defense counsel made timely objections to this assignment. Following a telephone conversation with the District Judge, the Magistrate noted their objections and commenced *voir dire*.   App. 13–16.   As is the practice in the Eastern District of New York, the Magistrate, rather than the attorneys, posed questions to the venirepersons.[4]   The Magistrate also introduced the prospective jurors to the offenses charged; instructed them on numerous points of law, including the presumption of innocence and the different burdens of persuasion in civil and criminal trials; and admonished chosen jurors not to discuss the case with anyone.   See generally Tr. of Jury Selection.   When defense counsel appeared before the

---

[1] Pub. L. 90–578, 82 Stat. 1108, as amended, 28 U. S. C. § 636(b)(3).

[2] Both petitioners were charged with conspiracy to distribute, and actual distribution of, cocaine, in violation of 21 U. S. C. §§ 841, 846 (1982 ed. and Supp. V).   In addition, petitioner Chavez-Tesina was charged with violating the Racketeer Influenced and Corrupt Organizations Act, 18 U. S. C. § 1962(c), and the Travel Act, 18 U. S. C. § 1952 (1982 ed. and Supp. V).   *United States* v. *Garcia*, 848 F. 2d 1324, 1327 (CA2 1988).

[3] Cited as authority for the assignment was a local rule that states: "Full-time magistrates shall have jurisdiction to discharge the duties set forth in 28 U. S. C. Sec 636."   Fed. Local Ct. Rule 1 (EDNY 1988); see *Garcia*, 848 F. 2d, at 1327.

[4] *Id.*, at 1338 (Oakes, J., dissenting).   Cf. Fed. Rule Crim. Proc. 24(a).

District Judge eight days later, they renewed their objections to the Magistrate's role in jury selection. The District Judge overruled the objections but said he would review any of the Magistrate's rulings *de novo*. App. 19. Defendants registered no specific challenge to any juror, and trial proceeded; 10 days later, the jury returned guilty verdicts against all five defendants. Gomez received two concurrent 10-year sentences, to be followed by a special 10-year parole term; Chavez-Tesina was ordered to serve 20 years on one count, with three lesser sentences to run concurrently, and lifetime special parole.

On appeal, defendants made no special claim of prejudice. They contended, as petitioners do before this Court, that the Magistrate had no power to conduct the *voir dire* examination and jury selection. A divided panel of the Court of Appeals rejected this argument. *United States* v. *Garcia*, 848 F. 2d 1324 (CA2 1988). The court held that Congress intended the additional duties clause to be construed broadly enough to include jury selection by magistrates. *Id.*, at 1329. Such a designation, the majority added, does not violate Article III or the Due Process Clause of the Federal Constitution. *Id.*, at 1330–1333. The dissenting judge expressed doubts concerning both the majority's statutory interpretation and its constitutional analysis, and concluded that the court should exercise its supervisory powers to forbid delegation of *voir dire* to magistrates "except, possibly, when the parties consent, and then only pursuant to rules controlling the district court's review."[5]

The Second Circuit's decision conflicts with the holding of the Fifth Circuit in *United States* v. *Ford*, 824 F. 2d 1430, 1438 (1987) (en banc), cert. denied, 484 U. S. 1034 (1988). The Government had urged the court to construe the addi-

---

[5] 848 F. 2d, at 1338 (Oakes, J.). Cf. *United States* v. *Ford*, 824 F. 2d 1430, 1440 (CA5 1987) (en banc) (Jolly, J., concurring in result) ("[I]t might be appropriate and wise for federal courts, in their supervisory capacity, to enact rules curtailing, or even precluding the use of magistrates at voir dire in certain situations"), cert. denied, 484 U. S. 1034 (1988).

tional duties clause of the Federal Magistrates Act to allow judges to delegate jury selection in felony trials even without the defendant's consent. That construction would provoke "grave constitutional questions," the en banc majority stated. 824 F. 2d, at 1430; see *id.*, at 1435. After stressing the importance of jury selection and noting the specificity with which Congress defined magistrates' duties regarding other judicial proceedings, the majority concluded:

> "Additional duty is a residuum, granting the power to delegate any task not otherwise forbidden after we carve away that congery of duties that Congress never envisioned would be delegated. We are not persuaded that Congress intended to grant authority to judges to delegate to magistrates the authority to preside over felony trials and over activities integral to and intimately tied with trial."[6]

We granted certiorari to resolve this important conflict. 488 U. S. 838 (1989).[7]

---

[6] 824 F. 2d, at 1438. Nonetheless, because the defendant failed to object and "the trial was fundamentally fair," the court held that the Magistrate's participation was harmless error and affirmed the conviction. *Id.*, at 1439; accord, *ibid.* (Jolly, J., concurring in result). In dissent, four judges maintained that the delegation fell within the express scope of the statute and withstood constitutional scrutiny. *Id.*, at 1440–1448 (Rubin, J.).

[7] The Eighth Circuit has followed the Fifth Circuit in *Ford*, while two Ninth Circuit opinions decide the issue much as the Second Circuit did below. Compare *United States* v. *Trice*, 864 F. 2d 1421 (CA8 1988), with *United States* v. *Peacock*, 761 F. 2d 1313 (CA9), cert. denied, 474 U. S. 847 (1985); *United States* v. *Bezold*, 760 F. 2d 999 (CA9 1985), cert. denied, 474 U. S. 1063 (1986). See also *United States* v. *Rodriguez-Suarez*, 856 F. 2d 135 (CA11 1988) (because no assertion of prejudice, declines to reach merits of claim), cert. denied, 488 U. S. 1045 (1989). In other opinions Courts of Appeals have rejected challenges to a magistrate's presiding over jury selection on procedural grounds. *United States* v. *Rivera-Sola*, 713 F. 2d 866 (CA1 1983) (defendant failed to object, no plain error); *United States* v. *DeFiore*, 720 F. 2d 757 (CA2 1983) (failure to object), cert. denied *sub nom. Coppola* v. *United States*, 466 U. S. 906 (1984).

## II

The Federal Magistrates Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U. S. C. § 636(b)(3). Read literally and without reference to the context in which they appear, these words might encompass any assignment that is not explicitly prohibited by statute or by the Constitution. The Act itself specifies some proscriptions: magistrates "may hold no other civil or military office or employment under the United States," § 631(c), nor "engage in the practice of law [or] any other business, occupation, or employment inconsistent with the expeditious, proper, and impartial performance of their duties as judicial officers," § 632(a). The only legal constraint on many other assignments not expressly barred—whether supervising repair of the courthouse electrical system or presiding at felony trials—must be found, according to the literal reading, in the Constitution. The panel majority below and the dissenters in *Ford* embraced this construction,[8] despite abiding concerns regarding the constitutionality of delegating felony trial duties to magistrates.[9]

---

[8] *Garcia*, 848 F. 2d, at 1329 (quoting *In re Establishment Inspection of Gilbert & Bennett Manufacturing Co.*, 589 F. 2d 1335, 1340–1341 (CA7) (in sustaining inspection warrant issued by Magistrate, states that the " 'only limitations on section 636(b)(3) are that the duties be consistent with the Constitution and federal laws and that they not be specifically excluded by section 636(b)(1)' "), cert. denied *sub nom. Chromalloy American Corp., Federal Malleable Div.* v. *Marshall*, 444 U. S. 884 (1979)); *Ford*, 824 F. 2d, at 1441 (Rubin, J.).

[9] See, *e. g.*, Hearings on S. 3475 et al. before the Subcommittee on Improvements in Judicial Machinery of the Senate Judiciary Committee, 89th Cong., 2d Sess., and 90th Cong., 1st Sess., p. 109 (1966–1967) (statement of Assistant Attorney General Vinson) (magistrates' jurisdiction to try minor criminal offenses unconstitutional even with defendant's waiver of rights); H. R. Rep. No. 1629, 90th Cong., 2d Sess., p. 21 (1968) (disagreeing with Vinson); 114 Cong. Rec. 27338–27343 (1968). See also *Ford*, 824 F. 2d, at 1437; H. R. Rep. No. 96–287, pp. 32–33 (1979) (dissenting views of Rep. Sensenbrenner).

It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question. See, *e. g.*, *Commodity Futures Trading Comm'n* v. *Schor,* 478 U. S. 833, 841 (1986); *United States* v. *Rumely,* 345 U. S. 41, 45 (1953); *Crowell* v. *Benson,* 285 U. S. 22, 62 (1932). In these cases, such an alternative interpretation of the additional duties clause readily may be deduced from the context of the overall statutory scheme. Cf. *Massachusetts* v. *Morash, ante,* at 115 ("'[I]n expounding a statute, we [are] not . . . guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy'") (quoting *Pilot Life Insurance Co.* v. *Dedeaux,* 481 U. S. 41, 51 (1987); *Richards* v. *United States,* 369 U. S. 1, 11 (1962)). When a statute creates an office to which it assigns specific duties, those duties outline the attributes of the office. Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties. Thus in *United States* v. *Raddatz,* 447 U. S. 667, 674–676 (1980); *Mathews* v. *Weber,* 423 U. S. 261 (1976); and *Wingo* v. *Wedding,* 418 U. S. 461 (1974), we interpreted the Federal Magistrates Act in light of its structure and purpose.

In *Mathews,* we considered whether preliminary review, argument, and preparation of recommended decisions in Social Security benefits cases were among the "additional duties" that a magistrate could perform. The Government opposed such referrals, arguing that Congress intended a magistrate to be a "'supernotary,'" assuming only the district judge's "irksome, ministerial tasks,"[10] while the benefits

---

[10] The Government had argued:

"In the Magistrates Act, Congress gave magistrates only a limited role in the operation of the federal judicial system. District courts were not authorized to delegate to the magistrates all judicial functions that they deemed appropriate. Rather, the role of the magistrates was to assist, and lighten the workload of, district judges by performing relatively minor

claimant likened the magistrate to a "'para-judge'" with "a wide range of substantive judicial duties and advisory functions." 423 U. S., at 268. Declining to choose either extreme or to read the "additional duties" language literally, we examined the Act's structure and determined that limited, advisory review, subject to the district judge's ongoing supervision and final decision, fell among the "range of duties" that Congress intended magistrates to perform. *Id.*, at 270. In accordance with our reasoning in *Mathews*, our task is to consider the office of magistrate as it pertains to seating a jury in a felony case.

## III

Before 1968, minor federal legal disputes were settled by United States commissioners, who collected fees for their services and often were not lawyers. Limitations on their jurisdiction resulted in the downgrading or dismissal of criminal offenses that otherwise would have to be tried by district judges. H. R. Rep. No. 1629, 90th Cong., 2d Sess., p. 14 (1968). The new office of magistrate, in contrast, was to be filled in most instances by attorneys. 82 Stat. 1108, 28 U. S. C. § 631(b) (1964 ed., Supp. IV). Paid by salary, magistrates were to be appointed by district judges to definite terms from which they could be removed only for cause. 82 Stat. 1109, 28 U. S. C. §§ 631(e), (h).

With enhanced status came greater responsibility. The Act not only conferred upon magistrates all the powers that commissioners had enjoyed, § 636(a), but also permitted district courts to establish rules by which magistrates could be assigned

"such additional duties as are not inconsistent with the Constitution and laws of the United States. The addi-

---

functions. The statutory phrase authorizing the district courts to assign to magistrates 'duties . . . not inconsistent with the Constitution and laws of the United States' must be read narrowly to reflect the limitations imposed upon the magistrates." Brief for Petitioner in *Mathews* v. *Weber*, O. T. 1975, No. 74–850, p. 8.

tional duties authorized by rule may include, but are not restricted to—

"(1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts;

"(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

"(3) preliminary review of applications for post-trial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing." § 636(b).

Commissioners had tried only "petty offenses."[11] Magistrates were empowered to try "minor offenses,"[12] but only upon special designation by the district court and only if the defendant, in writing, specifically waived his or her rights to trial before a judge and perhaps by a jury. 82 Stat. 1116, 18 U. S. C. § 3401(b) (1964 ed., Supp. IV). A convicted defendant could appeal to the district court, § 3402, and Congress contemplated that district courts would retain "the greatest possible scrutiny and control of a magistrate's trial jurisdiction," H. R. Rep. No. 1629, at 21.[13] Exempted from that

---

[11] "Petty offenses" included "[a]ny misdemeanor, the penalty for which . . . does not exceed imprisonment for a period of six months or a fine of not more than $500, or both," 18 U. S. C. § 1(3) (1964 ed.), repealed by Pub. L. 98–473, § 218(a)(1), 98 Stat. 2027.

[12] "'[M]inor offenses' means misdemeanors punishable under the laws of the United States, the penalty for which does not exceed imprisonment for a period of one year, or a fine of not more than $1,000, or both," 82 Stat. 1116, 18 U. S. C. § 3401(f) (1964 ed., Supp. IV).

[13] "The district judges may, for instance, exercise a veto power over the magistrate's jurisdiction in particular cases, require reports on cases pending before the magistrate, establish uniform procedures to be followed by

jurisdiction were a number of minor offenses—such as bribery and public corruption, deprivation of rights under color of law, and jury tampering, 82 Stat. 1116, 18 U. S. C. § 3401(f) (1964 ed., Supp. IV)—that required the exercise of delicate judgment and "as a matter of sound congressional policy, ought to be tried in the U. S. district courts." H. R. Rep. No. 1629, at 22.

In 1976, Congress amended the Act "to clarify and further define the additional duties which may be assigned to a United States Magistrate,"[14] H. R. Rep. No. 94–1609, p. 2 (1976).[15] Upon consent of the parties, a magistrate could be

---

all magistrates exercising minor offense trial jurisdiction, and generally supervise the magistrate in the exercise of his trial jurisdiction." H. R. Rep. No. 1629, at 21.

[14] In part, Congress intended to overturn judicial opinions limiting the scope of the Act, including *Wingo* v. *Wedding*, 418 U. S. 461 (1974) (magistrates not authorized to conduct evidentiary hearings in federal habeas corpus actions). H. R. Rep. No. 94–1609, p. 5 (1976); S. Rep. No. 94–625, pp. 3–4 (1976). Our holding in *Mathews* v. *Weber*, 423 U. S. 261 (1976) (Act authorizes magistrates to review and recommend disposition on Social Security benefits appeals), meanwhile, garnered approval. H. R. Rep. No. 94–1609, at 6.

[15] The relevant part of the 1976 Act, which has not been amended, reads as follows:

"An Act
"To improve judicial machinery by further defining the jurisdiction of United States magistrates, and for other purposes.
*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 636(b) of title 28, United States Code, is amended to read as follows:

·    ·    ·    ·

"(b)(1) Notwithstanding any provision of law to the contrary—
"(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any

designated a special master in any civil case. 90 Stat. 2729, 28 U. S. C. § 636(b)(2) (1976 ed.). A magistrate also could be assigned to "hear and determine any pretrial matter,"[16] subject to reconsideration by the district court on a showing that "the magistrate's order is clearly erroneous or contrary to law." § 636(b)(1)(A). Excepted were eight categories of "dispositive" pretrial motions; with regard to these a magistrate might conduct evidentiary and other hearings and rec-

---

pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

"(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

"(C) ·the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

"Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

"(2) A judge may designate a magistrate to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

"(3) A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 90 Stat. 2729, 28 U. S. C. § 636.

[16] A table in a Committee Report listed the following as criminal pretrial matters handled by magistrates: arrest warrants, search warrants, bail hearings, preliminary examinations, removal hearings, postindictment arraignments, pretrial conferences, and pretrial motions. H. R. Rep. No. 94-1609, at 7; see id., at 9.

ommend dispositions. § 636(b)(1)(B). If a party objected to the magistrate's recommendation, the judge was to "make a de novo determination" of the matter. § 636(b)(1)(C). The 1968 Act had listed such functions among a magistrate's additional duties; the 1976 amendments, in contrast, first described specific duties and then stated in a separate subsection that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." § 636(b)(3). A Committee Report explained:

> "Under this subsection, the district courts would remain free to experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad category of 'pretrial matters.' This subsection would permit, for example, a magistrate to review default judgments, order the exoneration or forfeiture of bonds in criminal cases, and accept returns of jury verdicts where the trial judge is unavailable. This subsection would also enable the court to delegate some of the more administrative functions to a magistrate, such as the appointment of attorneys in criminal cases and assistance in the preparation of plans to achieve prompt disposition of cases in the court.
>
> "If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties." H. R. Rep. No. 94–1609, at 12.

By 1979, congressional concerns regarding magistrates' abilities had decreased; a legislative Committee reported that "the magistrate system now plays an integral and important role in the Federal judicial system."[17] H. R. Rep. No. 96–287, p. 5 (1979). Accordingly, in the Federal Magistrates

---

[17] Accord, S. Rep. No. 96–74, pp. 3, 6 (1979). But see H. R. Rep. No. 96–287, at 31–33 (dissenting views of Rep. Holtzman and Rep. Sensenbrenner).

Act of 1979, Pub. L. 96–82, 93 Stat. 643–647, Congress enlarged the magistrate's jurisdiction over civil and criminal trials, codifying some of the experiments conducted under the Act's additional duties clause. See H. R. Rep. No. 96–287, at 2, 17. Thus since 1979 magistrates have been authorized to preside at, and enter final judgment in, civil trials, including those tried before a jury. 93 Stat. 643–644, 28 U. S. C. § 636(c). For the first time magistrates were permitted to conduct jury, as well as bench, trials on any misdemeanor charge.[18] 93 Stat. 646, 18 U. S. C. § 3401(b). As before, however, a magistrate's trial jurisdiction can be exercised only upon special designation by the district court, 93 Stat. 643, 28 U. S. C. § 636(c)(1); 93 Stat. 645, 18 U. S. C. § 3401(a), and it remains subject to judicial review.[19]

A critical limitation on this expanded jurisdiction is consent. As amended in 1979, the Act states that "neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent to reference of any civil matter to a magistrate." 93 Stat. 643, 28 U. S. C. § 636(c)(2). In criminal cases, the Government may petition for trial before a district judge.[20] "Defendants charged with misdemeanors

---

[18] "A misdemeanor is any offense for which the maximum term of imprisonment that may be imposed does not exceed one year. An unlimited fine may also be imposed." *Id.*, at 17. Accord, 18 U. S. C. § 3559(a) (1982 ed., Supp. V).

[19] Losing civil litigants are entitled to appeal to the district court or directly to the court of appeals and to seek discretionary review before this Court. 93 Stat. 643–644, 28 U. S. C. §§ 636(c)(3)–(6). Convicted defendants may take an appeal as of right to the district court. 18 U. S. C. § 3402.

[20] Whereas the 1968 Act had excluded certain minor offenses from the magistrate's jurisdiction, the 1979 amendments relaxed this requirement, providing:

"The district court may order that proceedings in any misdemeanor case be conducted before a district judge rather than a United States magistrate upon the court's own motion or, for good cause shown, upon petition by the attorney for the Government. Such petition should note the novelty, importance, or complexity of the case, or other pertinent factors, and

can refuse to consent to a magistrate and thus effect the same removal," S. Rep. No. 96–74, p. 7 (1979), for the magistrate's criminal trial jurisdiction depends on the defendant's specific, written consent.[21]

## IV

Through gradual congressional enlargement of magistrates' jurisdiction, the Federal Magistrates Act now expressly authorizes magistrates to preside at jury trials of all civil disputes and criminal misdemeanors, subject to special assignment, consent of the parties, and judicial review. The Act further details magistrates' functions regarding pretrial and post-trial matters, specifying two levels of review depending on the scope and significance of the magistrate's decision. The district court retains the power to assign to magistrates unspecified "additional duties," subject only to conditions or review that the court may choose to impose. By a literal reading this additional duties clause would permit magis-

---

be filed in accordance with regulations promulgated by the Attorney General." 93 Stat. 646, 18 U. S. C. § 3401(f).

United States Department of Justice regulations require that in cases involving many of the offenses excluded in the 1968 Act, the "attorney for the government shall consult with the Assistant Attorney General having supervisory authority over the subject matter in determining whether to petition for trial before a district judge." 28 CFR § 52.02(b)(2) (1988).

[21] As amended, the statute states:

"Any person charged with a misdemeanor may elect, however, to be tried before a judge of the district court for the district in which the offense was committed. The magistrate shall carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a judge of the district court and that he may have a right to trial by jury before a district judge or magistrate. The magistrate shall not proceed to try the case unless the defendant, after such explanation, files a written consent to be tried before the magistrate that specifically waives trial, judgment, and sentencing by a judge of the district court." 93 Stat. 646, 18 U. S. C. § 3401(b).

Cf. H. R. Rep. No. 96–287, at 20 ("Because of the consent requirement, magistrates will be used only as the bench, bar, and litigants desire, only in cases where they are felt by all participants to be competent").

trates to conduct felony trials. But the carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial.[22] The legislative history, with its repeated statements that magistrates should handle subsidiary matters to enable district judges to concentrate on trying cases,[23] and its assurances that magistrates' adjudicatory jurisdiction had been circumscribed in the interests of policy as well as constitutional constraints,[24] confirms this inference. Similar considerations lead us to conclude that Congress also did not contemplate inclusion of jury selection in felony trials among a magistrate's additional duties.[25]

Even though it is true that a criminal trial does not commence for purposes of the Double Jeopardy Clause until the jury is empaneled and sworn, *Serfass* v. *United States*, 420

---

[22] The Government concedes this point. See Tr. of Oral Arg. 30–31, 37; Brief for United States 14.

[23] See, *e. g.*, n. 16, *supra;* H. R. Rep. No. 94–1609, at 7 (magistrate is to "assist the district judge in a variety of pretrial and preliminary matters thereby facilitating the ultimate and final exercise of the adjudicatory function at the trial of the case"); S. Rep. No. 92–1065, p. 3 (1972) (magistrates "render valuable assistance to the judges of the district courts, thereby freeing the time of those judges for the actual trial of cases"); H. R. Rep. No. 1629, at 12 (purpose of 1968 Act is "to cull from the ever-growing workload of the U. S. district courts matters that are more desirably performed by a lower tier of judicial officers").

[24] See 114 Cong. Rec. 27342 (1968) (remarks of Rep. Poff) ("The intricate safeguards, the constitutional warnings, the statutory explanations, the written waivers and written elections required before the magistrate may exercise his trial jurisdiction in the individual case—all show a statutory intent to preserve trial before the district judge as the principal— rather than an elective or alternative—mode of proceeding in minor offense cases"); *id.*, at 27338–27343; H. R. Rep. No. 1629, at 21–22.

[25] Because we decide that the Federal Magistrates Act does not allow the delegation of jury selection to magistrates, we need not consider the second question presented in these cases; *i. e.*, whether such a delegation would be constitutional. Cf. *Mathews*, 423 U. S., at 269, n. 5; *Wingo*, 418 U. S., at 467, n. 4.

U. S. 377, 388 (1975), other constitutional rights attach before that point, see, *e. g.*, *Brewer* v. *Williams*, 430 U. S. 387, 398 (1977) (assistance of counsel). Thus in affirming *voir dire* as a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present, the Court wrote: " '[W]here the indictment is for a felony, the trial commences at least from the time when the work of empanelling the jury begins.' " *Lewis* v. *United States*, 146 U. S. 370, 374 (1892) (quoting *Hopt* v. *Utah*, 110 U. S. 574, 578 (1884)). See *Swain* v. *Alabama*, 380 U. S. 202, 219 (1965) (*voir dire* "a necessary part of trial by jury"); see also *Ricketts* v. *Adamson*, 483 U. S. 1, 3 (1987); *United States* v. *Powell*, 469 U. S. 57, 66 (1984). Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, *Rosales-Lopez* v. *United States*, 451 U. S. 182, 188 (1981); *Ham* v. *South Carolina*, 409 U. S. 524 (1973); *Dennis* v. *United States*, 339 U. S. 162 (1950), or predisposition about the defendant's culpability, *Irvin* v. *Dowd*, 366 U. S. 717 (1961). Indications that Congress likewise considers jury selection part of a felony trial may be gleaned, *inter alia*, from its passage in 1975 of the Speedy Trial Act, 18 U. S. C. § 3161 *et seq.* (1982 ed. and Supp. V),[26] and its placement of rules pertaining to criminal petit juries in a chapter entitled "Trial." See Fed. Rules Crim. Proc. 23, 24; cf. *id.*, Rule 43(a) (requiring defendant's presence "at every stage of the trial including the impaneling of the jury").

Even assuming that Congress did not consider *voir dire* to be part of trial, it is unlikely that it intended to allow a magistrate to conduct jury selection without procedural guidance or judicial review. Significantly, when Congress clarified the magistrate's duties in 1976, it did not identify the selection of a jury as either a "dispositive" matter covered by

---

[26] See *United States* v. *Howell*, 719 F. 2d 1258, 1262 (CA5 1983) (for Speedy Trial Act purposes, trial commences at *voir dire*), cert. denied, 467 U. S. 1228 (1984).

§ 636(b)(1)(B) or a "nondispositive" pretrial matter governed by § 636(b)(1)(A). To the limited extent that it fits into either category, we believe jury selection is more akin to those precisely defined, "dispositive" matters for which subparagraph (B) meticulously sets forth a *de novo* review procedure.[27] It is incongruous to assume that Congress implicitly required such review for jury selection yet failed even to mention that matter in the statute. It is equally incongruous to assume, in the alternative, that Congress intended not to require any review—not even the less stringent clearly-erroneous standard applicable to other pretrial matters[28]—of a magistrate's selection of a jury. Yet one of those assumptions would be a necessary component of a conclusion that Congress intended jury selection to be one of a magistrate's additional duties.

In any event, we harbor serious doubts that a district judge could review this function meaningfully. Far from an administrative empanelment process, *voir dire* represents jurors' first introduction to the substantive factual and legal issues in a case. To detect prejudices, the examiner—often, in the federal system, the court—must elicit from prospective

---

[27] Like motions to suppress evidence, petitions for writs of habeas corpus, and other dispositive matters entailing evidentiary hearings, jury selection requires the adjudicator to observe witnesses, make credibility determinations, and weigh contradictory evidence. See *Wainwright* v. *Witt*, 469 U. S. 412 (1985). Clearly it is more difficult to review the correctness of a magistrate's decisions on these matters than on pretrial matters, such as discovery motions, decided solely by reference to documents.

[28] Having concluded, n. 27, *supra*, that jury selection is more like the dispositive matters governed by § 636(b)(1)(B), we agree with the Eighth Circuit that "[s]ubparagraph (A) was plainly intended for less important matters than voir dire," *Trice*, 864 F. 2d, at 1428, and deem meritless the Government's contention—advanced for the first time in this litigation before this Court—that jury selection is among the pretrial matters that a magistrate may "hear and determine," subject to review only for mistakes that are clearly erroneous or contrary to law. See Brief for United States 7–11, and n. 7; Tr. of Oral Arg. 37.

jurors candid answers about intimate details of their lives. The court further must scrutinize not only spoken words but also gestures and attitudes of all participants to ensure the jury's impartiality. See, *e. g., Wainwright* v. *Witt,* 469 U. S. 412, 428, n. 9 (1985) (quoting *Reynolds* v. *United States,* 98 U. S. 145, 156–157 (1879)). But only words can be preserved for review; no transcript can recapture the atmosphere of the *voir dire,* which may persist throughout the trial.[29] Cf. *Waller* v. *Georgia,* 467 U. S. 39, 49, n. 9 (1984) ("While the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance, the Framers plainly thought them nonetheless real"). The absence of a specific reference to jury selection in the statute, or indeed, in the legislative history,[30] persuades us that Congress

---

[29] See Note, 102 Harv. L. Rev. 533, 538–539 (1988). Thus magistrates' participation in jury *voir dire* differs palpably from their preliminary review—which district judges easily may examine before making a final decision—of "closed administrative record[s]" in Social Security cases, a function clearly within the additional duties contemplated by Congress. See *Mathews,* 423 U. S., at 270–271.

In *United States* v. *Raddatz,* 447 U. S. 667, 680 (1980), we noted that a judge, if troubled by the credibility determinations a magistrate made during a suppression hearing, could rehear the witnesses. Although a judge similarly could question jurors further, as a practical matter a second interrogation might place jurors on the defensive, engendering prejudices irrelevant to the facts adduced at trial. See *Garcia,* 848 F. 2d, at 1337 (Oakes, J., dissenting). Even assuming that a district judge could review the magistrate's actions meaningfully by examining the transcript or reexamining jurors, the time consumed by such review would negate time initially saved by the delegation. See *Ford,* 824 F. 2d, at 1437.

[30] Although Committee Reports, for example, often include charts listing magistrates' duties, none mentions jury selection. See H. R. Rep. No. 96–287, at 4–5; S. Rep. No. 96–74, at 3; H. R. Rep. 94–1609, at 7; S. Rep. 94–625, at 5. The legislative history's lone reference to *voir dire* as a magistrate's duty appears to occur in a letter from the Chief Judge of the District of Oregon, to which a Committee Report referred favorably. H. R. Rep. No. 94–1609, at 9. The letter suggests that a magistrate selected

did not intend the additional duties clause to embrace this function.

## V

The Government concedes, as it must, that errors occurring during jury selection may be grounds for reversal of a conviction. Brief for United States 44, n. 41 (citing *Batson* v. *Kentucky*, 476 U. S. 79, 85 (1986); *Witherspoon* v. *Illinois*, 391 U. S. 510, 522 (1968)). Yet it argues that any error in these cases was harmless because petitioners allege no specific prejudice as a result of the Magistrate's conducting the *voir dire* examination. Brief for United States 42–45. We find no merit to this argument. Among those basic fair trial rights that "'can never be treated as harmless'" is a defendant's "right to an impartial adjudicator, be it judge or jury." *Gray* v. *Mississippi*, 481 U. S. 648, 668 (1987) (quoting *Chapman* v. *California*, 386 U. S. 18, 23 (1967)). Equally basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside. Thus harmless-error analysis does not apply in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury.

The judgment of the Court of Appeals is

*Reversed.*

---

juries only with consent of the parties, perhaps only in civil trials. Furthermore, it displays little concern about the validity of such assignments:

"How can we do all of this? We just do it. It's not necessary that we find authority in black and white before we give something to the magistrate. . . . Sure we might get shot down once in a while by an appellate court. So what?" Hearing on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Judiciary Committee, 94th Cong., 1st Sess., pp. 39–40 (1975).