**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Abisai RIVERA–GUERRERO,**
**Defendant–Appellant.**

No. 04–50115.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 2004.

Filed July 20, 2004.

Angela Marie Krueger (argued), Federal Defenders of San Diego, Inc., San Diego, CA, for the defendant-appellant.

Carol C. Lam, United States Attorney, Garrett M. Heenan (argued), Assistant U.S. Attorney, United States Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before: DOROTHY W. NELSON, JOHN R. GIBSON,* and SUSAN P. GRABER, Circuit Judges.

## OPINION

D.W. NELSON, Senior Circuit Judge.

On February 19, 2004, a magistrate judge entered an order authorizing the involuntary administration of medication to Abisai Rivera–Guerrero (hereafter "Rivera"), for the purpose of making Rivera competent to stand trial. On March 10, 2004, the district court denied Rivera's motion to reconsider the magistrate judge's decision. Rivera appeals the district court's decision, arguing that the magistrate judge lacked authority to issue the final order and that, on the merits, the order violated his constitutional rights. We do not reach the merits because we hold that the magistrate judge did lack authority to issue the final order. Accord-

---

* The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

ingly, we vacate the district court's order and remand for further proceedings consistent with this opinion.

## I. Factual and Procedural History

Rivera was arrested on September 14, 2003, for illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a). After Rivera failed to appear before the magistrate judge for his preliminary hearing, the magistrate judge granted his counsel's request for a psychological evaluation pursuant to 18 U.S.C. § 4241(b). On October 30, 2003, the magistrate judge held a competency hearing, at which she reviewed the psychological evaluation and determined that Rivera was not competent to stand trial. Accordingly, she ordered him committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d). Rivera was sent to a federal treatment facility in Springfield, Missouri, and has been held there since November 25, 2003.

On February 6, 2004, the magistrate judge held a status hearing in which she heard testimony from Rivera's treating psychiatrist, Dr. Robert Sarrazin, M.D., and his treating psychologist, Dr. David Mrad, Ph.D. The doctors notified the magistrate judge that Rivera was refusing his medication. They reported several instances of hostility and disorganized thinking during Rivera's time in custody. Dr. Mrad reported that Rivera was not considered sufficiently dangerous to warrant immediate emergency medication, because he was being held in a locked ward in a locked room. However, the doctor testified that in his opinion, Rivera needed forced medication in order to make him competent for trial and in order to have him around the other inmates.

In response to this testimony, the magistrate judge scheduled a hearing for February 19, 2004, in order to determine whether to issue an order for involuntary medication. At the hearing, the magistrate judge questioned the doctors at length about each of the factors delineated by the Supreme Court in *Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). Both the prosecution and the defense had the opportunity to question the doctors and present argument. At the hearing, Rivera's counsel also requested a continuance in order to allow time for consultation with a medical expert. The magistrate judge denied the request. At the close of the hearing, the magistrate judge issued an order authorizing the involuntary administration of medication to Rivera and an extension of his stay in the federal facility for an additional four months in order to make him competent to stand trial.

Rivera appealed the magistrate judge's order to the district court. In his appeal, he argued that the magistrate judge lacked both constitutional and statutory authority to issue an order for involuntary medication, an argument he had not raised before the magistrate judge. He also contested the merits of the magistrate judge's decision.

In a written order filed on March 10, 2004, the district court ruled that the magistrate judge's authority to issue the order for involuntary medication did not raise constitutional problems, nor did it exceed the statutory bounds of the Federal Magistrates Act, 28 U.S.C. §§ 631–639 (2000) (hereafter "the Act"). The district court adopted the government's argument that the involuntary medication order was a "non-dispositive collateral matter," and therefore it could be delegated to the magistrate judge without violating Article III of the Constitution. In addition, the court reviewed the provisions of the Act, and found that the order fell within its bounds, as a pretrial matter that was not one of the eight dispositive motions excepted from

the Act. The court found the appropriateness of this delegation confirmed by Local Criminal Rule 57.4.c.9, which authorizes the magistrate judge to "[h]ear motions and enter orders for examinations to determine mental competency under 18 U.S.C. § 4241."

The district court then reviewed the magistrate judge's determination for clear error. It held that the magistrate judge's finding that the government had provided clear and convincing evidence in support of each of the four *Sell* factors was not contrary to the law. It also held that Rivera's due process rights were not violated by the magistrate judge's denial of the request for continuance. Accordingly, the district court denied the motion to reconsider the magistrate judge's order.

Rivera timely appealed.

## II. Discussion

We review the delegation of authority to a magistrate judge de novo. *United States v. Gomez–Lepe,* 207 F.3d 623, 627 (9th Cir.2000).

### A. Statutory Analysis

Section 636 of the Federal Magistrates Act delineates the jurisdiction and powers of magistrate judges. 28 U.S.C. § 636. Section 636(b)(1)(A) permits the district court to designate any pretrial matter to the determination of the magistrate judge, with the exception of eight types of motions.[1] Section 636(b)(1)(B) allows the magistrate judge to conduct hearings and submit proposed findings of fact and rec-

ommendations to the district court on the excepted motions listed in § 636(b)(1)(A).[2] Finally, § 636(b)(3) permits a district court judge to assign the magistrate judge any additional duties not inconsistent with the Constitution and the laws of the United States.

The district court concluded that, because § 636(b)(1)(A) does not expressly preclude magistrate judges from issuing orders for involuntary medication, such orders are pretrial matters that can be delegated to magistrate judges under the Act. Although supported by a literal reading of the text of the statute, this reasoning runs counter to our precedent interpreting the Act. With regard to § 636(b)(1)(A), we have indicated that the eight exceptions are not an exhaustive list of all the pretrial matters that are excepted from the magistrate judge's authority. In *Maisonville v. F2 America, Inc.,* 902 F.2d 746 (9th Cir. 1990), we analyzed the Act in order to determine whether a magistrate judge has authority to order Rule 11 sanctions. We concluded that the magistrate judge's authority depended on whether the sanctions are characterized as dispositive or nondispositive of a claim or defense of a party. *Id.* at 747. Looking to the text of the Act, we noted:

> [S]ection 636(b)(1)(A) lists those motions which may not be determined by a magistrate. Accordingly, any motion not listed, *nor analogous to a motion listed* in this category, falls within the non-

---

1. The eight exceptions are motions for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to

involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A).

2. Section 636(b)(1)(B) also permits magistrate judges to make findings and recommendations for applications for post-trial relief by individuals convicted of criminal offenses and for prisoner petitions challenging conditions of confinement.

dispositive group of matters which a magistrate may determine.

*Id.* at 747–48 (emphasis added).

Thus, in contrast to the district court's conclusion, *Maisonville* suggests that the list of excepted pretrial matters can be expanded to include other, analogous motions as well. Two other circuits have explicitly adopted this interpretation of § 636(b)(1)(A). *See Massey v. City of Ferndale,* 7 F.3d 506, 508 (6th Cir.1993) ("Courts have construed this list of exceptions, which involve dispositive matters, to be nonexhaustive.") (alteration and internal quotation marks omitted); *Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1462 (10th Cir.1988) ("[M]otions not designated on their face as one of those excepted in subsection (A) are nevertheless to be treated as such a motion when they have an identical effect.").

The Supreme Court has also indicated that the listed exceptions from § 636(b)(1)(A) are not exclusive. In *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the Court considered whether the Act authorized magistrate judges to conduct jury selection. The Court reasoned:

> [Congress] did not identify the selection of a jury as either a "dispositive" matter covered by § 636(b)(1)(B) or a "nondispositive" pretrial matter governed by § 636(b)(1)(A). To the limited extent that it fits into either category, we believe jury selection is more akin to those precisely defined, "dispositive" matters for which subparagraph (B) meticulously sets forth a *de novo* review procedure.

*Id.* at 873–74, 109 S.Ct. 2237. Thus, even though the statute does not list jury selection as one of the exceptions from subparagraph (A), the Court rejected the possibility that Congress intended it to be considered one of the pretrial matters

that can be delegated to the final authority of a magistrate judge.

■ The foregoing discussion demonstrates that there is significant precedent to support the conclusion that we do not simply look to the list of excepted pretrial matters in order to determine the magistrate judge's authority. Instead, we must look to the effect of the motion, in order to determine whether it is properly characterized as "dispositive or non-dispositive of a claim or defense of a party." *Maisonville,* 902 F.2d at 747.

■ The district court erred when it concluded that the involuntary medication order was not a final order and was therefore not dispositive. The court based its analysis of the non-dispositive nature of the order on the *Sell* Court's statement that an order to forcibly medicate "is completely separate from the merits of the action." *Sell,* 539 U.S. at 176, 123 S.Ct. 2174 (internal quotation marks omitted). This analysis conflates the meaning of "final" in two very different contexts: final as opposed to collateral and final as opposed to non-dispositive. It is quite conceivable that an order could not be "final" due to its collateral nature and yet still be "final" in the sense of its dispositive nature. In fact, that was precisely the situation in *Sell.* It was because the order was both collateral *and* dispositive that the Court found that it was appealable under the "collateral order" exception. To fall under this exception, an order must "conclusively determine the disputed question"—in other words, it must be dispositive. *Id.* (alteration and internal quotation marks omitted). The *Sell* Court found that the involuntary medication order fulfilled this requirement. *Id.* ("The order ... conclusively determine[s] the disputed question, namely, whether Sell has a legal right to avoid forced medication.") (internal quotation marks omitted).

■ Furthermore, this disputed question is properly considered "a claim or defense of a party." *Maisonville*, 902 F.2d at 747. The decision whether to issue an order authorizing involuntary medication will have direct consequences on Rivera's defense that he is not competent to stand trial. *See Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). In addition, the order will be dispositive with regard to Rivera's affirmative claim that he has a constitutional right to be free from unwanted medication. While this claim is not directly tied to the merits of Rivera's case, it has crucial implications for his right to a fair trial. *See, e.g., Riggins v. Nevada*, 504 U.S. 127, 141–45, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring in the judgment).

■ We conclude that an order authorizing involuntary medication is dispositive of a claim or defense of a party, and therefore, under *Maisonville*, it is not among the pretrial matters that can be fully delegated to the magistrate judge under § 636(b)(1)(A). This conclusion is further supported by *Gomez's* discussion of the provision, in which the Court noted its agreement with the Eighth Circuit's holding that " '[s]ubparagraph (A) was plainly intended for less important matters than voir dire.' " *Gomez*, 490 U.S. at 874 n. 28, 109 S.Ct. 2237 (quoting *United States v. Trice*, 864 F.2d 1421, 1428 (8th Cir.1988)). We find no reason that the

Court's reasoning would not apply to this context with equal force, and we conclude that subparagraph (A) was plainly intended for less important matters than orders authorizing the involuntary administration of medication.

**B. The Principle of Constitutional Avoidance**

In addition to the foregoing statutory analysis, there are also serious constitutional concerns that arise with the delegation of involuntary medication orders to magistrate judges. In *Gomez*, the Supreme Court emphasized that the Act must be read with its legislative history in mind, which contained assurances that "magistrates' adjudicatory jurisdiction had been circumscribed in the interests of policy as well as constitutional constraints." 490 U.S. at 872, 109 S.Ct. 2237. This led the Court to infer that the Act would not allow magistrate judges to undertake jury selection, under either § 636(b)(1)(A) or § 636(b)(3).[3] *Id.*

In *Peretz v. United States*, 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991), the Court discussed its conclusion in *Gomez*: "The principle of constitutional avoidance led us to demand clear evidence that Congress actually intended to permit magistrates to take on a role that raised a substantial constitutional question." *Id.* at 929–30. *See also Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 545 (9th Cir.1984) (en banc) ("It would seem at a minimum, however, that good cause for resumption of direct Article III control exists in a case ... where a substantial constitutional question is presented ...."). The *Peretz* Court approved of the reasoning in *Gomez*, but

---

**3.** In Rivera's case, neither the district court nor the government argued that the magistrate judge's authority to order involuntary medication lies in the additional duties clause, § 636(b)(3). Even if they had, this argument would be unavailing based on our discussion of the doctrine of constitutional avoidance.

found that if the defendant expressly consents to the magistrate judge's authority to conduct jury selection, the constitutional difficulty is removed. *Peretz,* 501 U.S. at 932, 111 S.Ct. 2661.

■■ Applying the principle of constitutional avoidance to the case at hand strongly supports our conclusion that, like jury selection, involuntary medication is not the type of pretrial matter that Congress intended the Act to delegate to magistrate judges. It is well-established that "involuntary medical treatment raises questions of clear constitutional importance." *Sell,* 539 U.S. at 176, 123 S.Ct. 2174; *see also Riggins v. Nevada,* 504 U.S. at 133–34, 112 S.Ct. 1810; *Cruzan v. Dir., Mo. Dep't of Health,* 497 U.S. 261, 278–79, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990); *Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). Allowing a magistrate judge to make the ultimate decision in a matter of such clear constitutional import would raise serious Article III concerns. *See, e.g., United States v. Raddatz,* 447 U.S. 667, 683, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (The delegation of findings and recommendations to the magistrate judge on issues involving constitutional rights does not violate Article III *"so long as the ultimate decision is made by the district court."*) (emphasis added). Therefore, as in *Gomez,* the principle of constitutional avoidance requires that the statute be interpreted to prevent the delegation to the magistrate judge of final determinations regarding involuntary medication.[4]

■ Local Criminal Rule 57.4.c.9 does not alter our conclusion that the magistrate judge exceeded her constitutional and statutory bounds by issuing a final order for involuntary medication. The Rule permits the magistrate judge to hear motions and enter orders for examinations to determine mental competency under 18 U.S.C. § 4241. There is nothing in the text of this rule that allows magistrate judges to issue orders authorizing involuntary medication. The rule allows the magistrate judge to order an examination to determine competency, a decision that has no dispositive effect and is therefore not reserved for Article III judges.

### C. Proposed Findings and Recommendations

■ We find no statutory or constitutional concerns raised by allowing the magistrate judge to submit proposed findings and recommendations on the involuntary medication determination to the district court for de novo review. As previously discussed, although an order for involuntary medication is not one of the listed exceptions in subparagraph (A) for which delegation with de novo review is permitted under subparagraph (B), it is analogous to the types of dispositive motions excepted by (A), and it follows that it is encompassed by (B). Alternatively, it could be considered an additional duty under § 636(b)(3). *Raddatz* makes clear that the delegation to magistrate judges of matters that implicate constitutional rights for proposed findings and recommendations is constitutional so long as the findings and recommendations are subject to de novo review by an Article III judge. *See Raddatz,* 447 U.S. at 683, 100 S.Ct. 2406.

---

**4.** There is no evidence that Rivera was ever given the opportunity to object or consent to the magistrate judge's authority, and the government does not argue that the order is permissible due to some form of consent from Rivera. Therefore, we do not reach the question of whether a defendant who has been found not competent to stand trial could give meaningful consent to the magistrate judge's authority to issue a final order authorizing involuntary medication.

■ Thus, the problem with the order of the district court before us boils down to a matter of standard of review. Had the district court applied de novo review to the magistrate judge's order, we would have no need to remand the case. *See United States v. Weissberger,* 951 F.2d 392, 398 (D.C.Cir.1991) (finding that the magistrate judge exceeded her authority but that any defect was cured by the district court's de novo review of the original order). However, in its analysis, the district court repeatedly underscored its deferential stance with regard to the magistrate judge's order. There is simply no way to read the district court's analysis as a product of its independent judgment. Therefore, we must vacate the district court's order and remand. *See Ocelot Oil,* 847 F.2d at 1464 (holding that although the district court had reviewed the record thoroughly, it had done so "constrained by the assumption that the magistrate's order must be affirmed absent clear error," and therefore remanding for the court to "review the record in light of its own independent judgment").

■ In light of the accelerated nature of this appeal, we remand for the district court to apply de novo review to the magistrate judge's unauthorized order. By doing so, the district court should treat the magistrate judge's "order" as proposed findings and recommendations. Of course, in exercising its independent judgment, "[t]he district judge is free to follow [the magistrate judge's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew." *Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

■ Finally, we note that in *Sell,* the Court appears to have reviewed an order by a magistrate judge that was affirmed by the district court and then appealed.

*Sell,* 539 U.S. at 175, 123 S.Ct. 2174. It is not clear from the opinion what standard of review the district court applied to the magistrate judge's order, although the opinion does state that the magistrate judge entered the order pursuant to 28 U.S.C. § 636(b)(1)(A), which would suggest that the district court reviewed for clear error. The Supreme Court did not address the magistrate judge's authority to issue the order. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925); *see also United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37–38, 73 S.Ct. 67, 97 L.Ed. 54 (1952). Therefore, the fact that *Sell* reviewed a magistrate judge's order without discussing the magistrate judge's authority to issue the order does not alter our analysis.

### III. Conclusion

Our case law—as well as that of other circuits and the Supreme Court—makes clear that an involuntary medication order is not the type of pretrial matter the Federal Magistrates Act permits district courts to delegate to the final authority of magistrate judges. Furthermore, there is significant Supreme Court precedent holding that there are important constitutional rights at stake for Rivera in determining whether the state can administer involuntary medication for the purpose of making him competent to stand trial. There is equally significant Supreme Court precedent underscoring the constitutional requirement that Article III judges are the ultimate decision makers on matters involving substantial constitutional questions. In light of these statutory and constitutional lines of precedent, we hold that

magistrate judges lack authority to issue final orders authorizing the involuntary administration of medication. Accordingly, we vacate the district court's order and remand this case for further proceedings consistent with this opinion.

VACATED and REMANDED.