*448 Justice Scalia,
with whom Justice Ginsburg joins,
dissenting.
In my view, the registration requirements of the Sex Offender Registration and Notification Act (Act), 120 Stat. 590, 42 U. S. C. § 16901 et seq. (2006 ed. and Supp. Ill), apply of their own force, without action by the Attorney General. The Act’s statement that “[t]he Attorney General shall have the authority to specify the applicability of the [registration] requirements” to pre-Act sex offenders, § 16913(d), is best understood as conferring on the Attorney General an authority to make exceptions to the otherwise applicable registration requirements.
To begin with, I do not share the Court’s belief that to “specify the applicability” more naturally means, in the present context, to “make applicable” rather than to “make inapplicable.” See ante, at 439-440. The example the Court gives, the Commissioner of Baseball’s “ ‘authority to specify the applicability’ ” of more stringent minor-league drug testing policies to the major leagues, ibid., is entirely inapt, because it deals with a policy that on its face is otherwise not applicable. Since the major leagues are not covered by the policies, the Commissioner’s “ ‘authority to specify [their] applicability’ ” can mean nothing else but the authority to render them applicable. What we have here, however, is a statute that states in unqualified terms that “[a] sex offender shall register,” § 16913(a) — and that the Court rightly believes was meant to cover pre-Act offenders.* The issue is whether “specify the applicability” means that no pre-Act offenders need register unless the Attorney General says so, or rather *449 that the Attorney General may excuse the unqualified requirement for pre-Act offenders. In that context, it seems to me that the latter meaning is more natural. One specifies the applicability of an application that already exists by describing or revising its contours.
I think it preferable to give “specify” this meaning not only because here it is more natural, but also because the alternative is to read the statute as leaving it up to the Attorney General whether the registration requirement would ever apply to pre-Act offenders, even though registration of pre-Act offenders was (as the Court acknowledges) what the statute sought to achieve. For the statute does not instruct the Attorney General to specify; it merely gives him “authority” to do so. In this respect, the provision at issue here stands in marked contrast to other provisions of the Act which clearly impose duties on the Attorney General. See, e. g., § 16912(b) (“The Attorney General shall issue guidelines and regulations to interpret and implement this subchap-ter”); § 16917(b) (“The Attorney General shall prescribe rules for the notification of [certain] sex offenders”); § 16919(a) (“The Attorney General shall maintain a national database”); § 16926(a) (“The Attorney General shall establish and implement a Sex Offender Management Assistance program”).
The Court’s response to this — that “there was no need for a mandatory requirement to avoid [the] unrealistic possibility” that the Attorney General would not specify, ante, at 445 — seems to me a fine answer to the question “What mandatory requirements must a poorly drafted statute contain in order to be workable?” It is an inadequate answer, however, to the question that is relevant here: “Would Congress have written the provision this way if it wanted pre-Act offenders covered and did not think they were covered absent specification by the Attorney General?” Intelligently drafted statutes make mandatory those executive acts essential to their functioning, whether or not those acts would likely occur anyway. It would have taken little effort (in *450 fact, less effort) for Congress to write “the Attorney General shall specify the applicability” instead of “[t]he Attorney General shall have the authority to specify the applicability.” The latter formulation confers discretion, and it is simply implausible that the Attorney General was given discretion to determine whether coverage of pre-Act offenders (one of the purposes of the Act) should exist.
Indeed, it is not entirely clear to me that Congress can constitutionally leave it to the Attorney General to decide— with no statutory standard whatever governing his discretion — whether a criminal statute will or will not apply to certain individuals. That seems to me sailing close to the wind with regard to the principle that legislative powers are nondelegable, see Whitman v. American Trucking Assns., Inc., 531 U. S. 457, 472-476 (2001); Loving v. United States, 517 U. S. 748, 776-777 (1996) (Scalia, J., concurring in part and concurring in judgment), and “[i]t is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question,” Gomez v. United States, 490 U. S. 858, 864 (1989). Construing the Act to give the Attorney General the power to reduce congressionally imposed requirements fits that bill, because such a power is little more than a formalized version of the time-honored practice of prosecutorial discretion.
The Court points out that there might have been need for “different federal registration treatment of different categories of pre-Act offenders,” ante, at 440-441, and that absent a “ruling from the Attorney General” pre-Act offenders would be uncertain “about whether, or how, the new registration requirements applied to them,” ante, at 441. But attending to those details would certainly come within the Attorney General’s authority to “specify” application of the Act — and so would the temporary suspension of registration requirements pending the Attorney General’s resolution of those details. And of course the uncertainty of where to *451 register could form the basis for the Attorney General’s exercise of his discretion not to prosecute in individual cases. Neither problem, it seems to me, justifies the extraordinary interpretation that this Act does not apply to pre-Act offenders unless and until the Attorney General, in his discretion, says so.
For these reasons, I respectfully dissent.

The Court reaches this conclusion based on an inquiry into legislative history. See ante, at 442-443. That inquiry is quite superfluous, however, since the text of the Act itself makes clear that Congress sought to “establis[h] a comprehensive national system for the registration of [sex offenders],” 42 U. S. C. § 16901, with “sex offender” defined broadly to “mea[n] an individual who was convicted of a sex offense,” § 16911(1) (emphasis added).