# Secretary of Education Review of Administrative Law Judge Decisions

Section 22 of the Drug-Free Schools and Communities Act Amendments of 1989 provides that a decision of an administrative law judge reviewing the termination of federal assistance to educational institutions or agencies "shall be considered to be a final agency action." This provision does not preclude the Secretary of Education from reviewing such administrative law judge decisions.

Because section 22 makes an administrative law judge decision a final agency action for purposes of judicial review, it deprives the Secretary of the power to require exhaustion of secretarial review procedures before an aggrieved party may seek judicial review.

January 31, 1991

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF EDUCATION

This memorandum is in response to your request for our opinion whether section 22 of the Drug-Free Schools and Communities Act Amendments of 1989 precludes the Secretary of Education from reviewing decisions of administrative law judges concerning the termination of federal assistance to educational institutions or agencies. You have also requested that, if section 22 does not forbid such review, we further consider whether exhaustion of the procedures for secretarial review may be made a prerequisite for seeking judicial review.

We conclude that the Drug-Free Schools and Communities Act Amendments do not preclude the Secretary of Education from reviewing decisions of administrative law judges under section 22. Our conclusion is supported not only by the text and structure of the Act, but also by familiar principles of administrative law. We further conclude that the Secretary may not require litigants to exhaust the procedures for secretarial review before seeking judicial review.

## I.

Section 22 of the Drug-Free Schools and Communities Act Amendments of 1989, Pub. L. No. 101-226, 103 Stat. 1928, 1938 (codified at 20 U.S.C.

§§ 1145g, 3224a) ("the Act"), permits institutions of higher education and local education agencies to appeal to an administrative law judge ("ALJ") when the Secretary of Education ("the Secretary") decides to terminate financial assistance because of a failure to comply with the Higher Education Act of 1965, 20 U.S.C. §§ 1001-1146a, or the Drug-Free Schools and Communities Act of 1986, 20 U.S.C. §§ 3171-3227. Section 22 states that "[t]he decision of the [administrative law] judge with respect to such termination shall be considered to be a final agency action."

On April 24, 1990, the Secretary published proposed regulations under the Act. 55 Fed. Reg. 17,384. Under the proposed regulations, the decision of an ALJ in an appeal under section 22 would be "the final decision of the agency unless the Secretary on his or her own initiative or on request by either party reviews the decision."[1] *Id.* at 17,393 (proposed 34 C.F.R. § 86.410(b)(1)). The proposed regulations would further provide that the ALJ's decision would not take effect until the Secretary completed any review. *Id.* (proposed 34 C.F.R. § 86.410(d)).

In response to the notice of the proposed rulemaking, three Members of Congress submitted joint comments disputing the Secretary's authority to review the decisions of ALJs under section 22. Letter from Congressmen Augustus F. Hawkins, William F. Goodling, and William D. Ford, to the Office of the Secretary, U.S. Department of Education (June 8, 1990). Citing the section 22 directive that "[t]he decision of the judge with respect to such termination shall be considered to be a final agency action," *id.* at 1, and an analysis by the Congressional Research Service, the Congressmen maintained that the Act precluded the Secretary from reviewing ALJ decisions.

On August 16, 1990, the Secretary published the regulations in final form. 55 Fed. Reg. 33,580. The Secretary rejected the contention that section 22 precluded secretarial review of ALJ decisions. Such a conclusion, he stated, "would produce a result that is not only unprecedented within the Department's experience and inconsistent with the organic statutes that govern the operations of the Department, but would also be subject to serious constitutional question under the Appointments Clause." *Id.* at 33,600. The Secretary did, however, make one "clarifying change" to the regulations relating to secretarial review so that they would "conform more closely to the language of the statute." *Id.* The final version of 34 C.F.R. § 86.410(b)(1) thus provides:

> The ALJ's decision is the final decision of the agency. However, the Secretary reviews the decision on request of either party, and may review the decision on his or her own initiative.

---

[1] The parties would be the local education agency or institution of higher education and a "designated Department official," to whom the Secretary would delegate his authority to make the initial decision to terminate assistance. 55 Fed. Reg. at 17,392 (proposed 34 C.F.R. § 86.402(a)).

55 Fed. Reg. at 33,586. The question presented here is whether this regulation is a lawful implementation of section 22.

## II.

Section 22 provides that the ALJ's decision "shall be *considered to be a final agency action*." 20 U.S.C. §§ 1145g(d), 3224a(e) (emphasis added). This phraseology on its face suggests that Congress intended the ALJ's decision to be final agency action in some particularized sense, not that it be final in the general sense that no further review would be possible. Congress did not provide that the ALJ's decision "shall be" final agency action; it provided that it "shall be considered to be" final agency action.[2] It did not provide that the ALJ's decision shall be considered to be *the* final agency action; it provided merely that the ALJ's decision shall be considered to be *a* final agency action. Had Congress intended ALJ decisions to be final in the sense that no further agency review would be available, it would have at least provided so expressly.[3]

Congress' deliberate decision to have the ALJ's decision "considered to be a final agency action" we believe represents a conscious effort to harmonize section 22 with the general body of administrative law authorities — particularly the judicial review procedures of the Administrative Procedure Act ("APA") — which refer to "final agency action" as that action after which judicial review is available. Thus, when Congress chose the somewhat unusual language that it did, we believe it intended that the ALJ's decisions be final only in the sense that judicial review would thereafter be available.

Under the APA, "final agency action" is generally understood to mean that action which is necessary and sufficient for judicial review. Title 5, section 704, for example, provides that, "*final agency action* for which there is no other adequate remedy in a court [is] subject to judicial review." (Emphasis added.) There is an extensive body of precedent on the question whether an agency action is final and, therefore, reviewable under the APA. *See, e.g., FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980); *Carter/ Mondale Presidential Comm., Inc. v. FEC*, 711 F.2d 279 (D.C. Cir. 1983). Under these authorities, an agency's decision need not be its last word on a subject to be considered "final agency action." Indeed, the APA expressly provides that an agency action can be "final" for purposes of the APA, and

---

[2] Because "final agency action" is a term of art, there is, in fact, no substantive difference between these two locutions  The locution chosen, however, plainly telegraphs that the term "final agency action" which follows is to be understood to have specialized meaning

[3] Unequivocal language that the ALJ's decision "shall be the final agency action" would, at a minimum, present a question as to whether Congress intended for the ALJ decision to be final in the sense that no further agency review is available, although it is unlikely that we would construe even this language to express an intent to foreclose secretarial review, absent affirmative evidence that Congress so intended. *See* discussion *infra*.

10

thus for purposes of judicial review, even though it is subject to reconsideration or appeal to a higher authority within the agency.[4] "Final agency action" therefore is a familiar and well-developed term of administrative law referring to the action after which judicial review may be available.

Where Congress employs a term of art with a well-established meaning, it is generally presumed in the absence of evidence to the contrary to have intended that meaning to apply. *See Moskal v. United States*, 498 U.S. 103, 114 (1990). *See also id.* at 121 (Scalia, J., dissenting) ("when a statute employs a term with a specialized legal meaning relevant to the matter at hand, that meaning governs") (citing *Morissette v. United States*, 342 U.S. 246, 263 (1952)).[5] Section 22 therefore is most naturally read as a signal to the respective parties and a direction to the courts that an ALJ's decision shall be considered to be a final agency action for purposes of determining the availability of judicial review under 5 U.S.C. § 704. As under the APA, section 22 should not be read to preclude further review of an ALJ's decision within the agency, and particularly by the Secretary. Indeed, we are not aware of any statute in which Congress, in an effort to foreclose further agency review, directed that an inferior employee's decision shall be final.

Nothing in the legislative history of this particular Act suggests an intention on the part of Congress to depart from the accepted meaning of the term "final agency action" as it is generally used in administrative law. There is neither a House nor a Senate committee report on the Act. There is no comment upon the relevant portions of the Act in the Conference Report, H.R. Rep. No. 384, 101st Cong., 1st Sess. (1989), or in the floor debates. We would be especially hesitant to infer from such silence a congressional intent to depart from the well-settled understanding of "final agency action." *See Morissette*, 342 U.S. at 263 ("In such case, absence of contrary direction [by Congress] may be taken as satisfaction with widely accepted definitions, not as a departure from them.").

The conclusion that Congress did not intend section 22 to foreclose secretarial review is further supported by the structure of the Act. The Act explicitly provides for an "appeal" of the Secretary's decision to an ALJ,

---

[4] The APA states that:
> Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.

[5] In *Morissette*, Justice Jackson explained:
> [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

342 U.S. at 263.

who is an employee, or subordinate officer, of the Department of Education.[6] *See* 20 U.S.C. § 1234(c) ("The [administrative law] judges shall be officers or employees of the Department."). If an ALJ's decisions were "final" in the sense that they were not subject to review by the Secretary, a decision by the head of a department could be reversed by his subordinate.[7] According finality as a matter of law to a subordinate's decision would conflict with the statutory commands that the "Department [of Education] shall be administered . . . under the supervision and direction of a Secretary of Education," 20 U.S.C. § 3411, and that "[t]he Secretary shall be responsible for the administration of the programs authorized" by the Act. *Id.* § 3222(a).[8] As the preamble to the Secretary's proposed rule stated, insulation of ALJ decisions from secretarial review would mean that "the Secretary could not ensure consistent interpretation of the law, or even correct manifestly erroneous interpretations." 55 Fed. Reg. at 17,387. An intent to divest the Secretary of such authority seems especially improbable as to decisions with the clear potential to strain federal-state relations, such as those surrounding the termination of federal funds for a local education agency.[9]

Interpreting section 22 so as to permit secretarial review of ALJ decisions also conforms proceedings under section 22 with the general administrative procedures under the APA. Under that statute, an "agency" may itself preside over a trial-type hearing, or it may assign the case for a hearing before a "presiding employee[]." 5 U.S.C. § 556(b). Unless otherwise provided by statute, the "presiding employee[s]" to which the APA refers are ALJs. 5 U.S.C. §§ 556(b)(3), 3105. Under the APA, "[w]hen the presiding employee [at a trial-type hearing] makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there

---

[6] Although the statute refers to an initial "determination by the Secretary," 20 U.S.C. §§ 1145g(d), 3224a(e), the first determination to end financial assistance would be made not by the Secretary but by a "designated Department official" 55 Fed Reg. at 33,585 (to be codified at 34 C.F.R. §§ 86.304(a), 86.400(a)). The regulations set out "procedures governing appeals of decisions by [that] designated Department official." *Id.* § 86.400(a).

[7] We do not believe it is anomalous under our interpretation that the statute permits the Secretary to review an appeal from a decision that in theory was itself an appeal from "the Secretary's" decision. Because the initial decision is made not by the Secretary, but rather by his designee, the Secretary will likely be considering the matter for the first time in reviewing the ALJ's decision. We would not think it odd even if the same individual were both to make the initial determination and review the ALJ's decision. It would not be unreasonable to create a system under which an official is permitted to reconsider his initial determination with the benefit of a record generated during trial-type proceedings before an ALJ

[8] The analysis appended to the final rule observes that such insulation would be "inconsistent with the organic statutes that govern the operations of the Department." 55 Fed. Reg. at 33,600.

[9] We find unpersuasive the assertion in the Congressional Research Service ("CRS") analysis that the absence of an explicit right in the Secretary to review an ALJ's decisions, *see, e.g.,* 20 U.S.C. § 1234a (explicitly providing for secretarial review of ALJ decisions), implies an intent not to confer such authority here. Memorandum to House Committee on Education and Labor, from Kevin B. Greely, Congressional Research Service, at 5 (June 4, 1990). Both 20 U.S.C. § 1234a and a similar statute not cited by CRS, 20 U.S.C. § 1234d, unlike section 22, appear in the context of elaborate statutorily-mandated review procedures where specification of the Secretary's power of review might be expected. Because of the vastly different context in which section 22 appears, any inference based upon the existence in 20 U.S.C. § 1234, but not in section 22, of an explicit right of secretarial review would be unwarranted.

12

is an appeal to, or review on motion of, the agency within time provided by rule." 5 U.S.C. § 557(b). The APA further states that "[o]n appeal from or review of the initial decision [of the presiding employee], the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule." *Id.* The APA therefore contemplates that decisions by ALJs will be reviewable in precisely the manner allowed by the Secretary's regulations here. Decisions will be final unless the parties or the "agency" seeks review, but if there is further review the agency may exercise all of its powers as if the agency had itself presided over the hearing.[10]

Accordingly, we conclude on the strength of the textual, structural and historical evidence that Congress, in mandating that ALJ decisions under section 22 "shall be considered to be a final agency action," did not intend to preclude further review of an ALJ's decision by the head of the agency in which the ALJ is employed, but rather intended only that the ALJ's decision be considered a final agency action for purposes of judicial review.

## III.

The conclusion that the Act does not preclude review by the Secretary is reinforced by the fact that the contrary conclusion would render the Act constitutionally infirm. It is an elementary canon of construction that statutes should be interpreted to avoid constitutional difficulties, provided the adopted interpretation is reasonable. *Gomez v. United States*, 490 U.S. 858, 864 (1989); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986). If the Act were construed to forbid the Secretary's review of an ALJ decision, there would be presented serious constitutional questions relating to the ALJ's appointments and the lack of presidential control over their activities.

Under the Appointments Clause, the President

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States . . .

---

[10] For purposes of this opinion, we view 5 U.S.C. § 557(b) as providing a model for administrative adjudication; however, we do not address whether that section actually governs hearings under the Act. We need not reach that question, given our conclusion that decisions of ALJs under section 22 are reviewable whether or not 5 U.S.C. § 557(b) applies to hearings under the Act.

It is reasonable to look for guidance to sections 556 and 557 of the APA, even though most trial-type hearings are not conducted pursuant to those provisions because the governing statutes under which agencies make their determinations do not require that decisions be made "on the record after opportunity for an agency hearing." *See, e.g., United States v. Florida East Coast Ry. Co.*, 410 U.S. 224, 234-38 (1973). Where a trial-type hearing before an ALJ is available under regulations rather than under the command of the APA, agencies typically provide for review by higher authority. *See, e.g.*, 18 C.F.R. § 385.711 (Federal Energy Regulatory Commission); 47 C.F.R. § 1.276 (Federal Communications Commission); 49 C.F.R. § 1115.2 (Interstate Commerce Commission); 40 C.F.R. § 124.91 (certain proceedings of the Environmental Protection Agency).

but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. Because the Secretary, who is the head of the, Department, appoints the Department's ALJs, 5 U.S.C. § 3105; 20 U.S.C. § 1234(b), (who are not confirmed by the Senate), they are properly appointed only if they serve as "inferior officers."

An ALJ whose decision could not be reviewed by the Secretary, however, would appear to be acting as a principal officer of the United States. He would be an "Officer of the United States" because he would be exercising "significant authority pursuant to the laws of the United States," including "determinations of eligibility for funds." *Buckley v. Valeo*, 424 U.S. 1, 126, 141 (1976). And applying the criteria enumerated in *Morrison v. Olson*, 487 U.S. 654 (1988), he most likely would be a principal, not an "inferior," officer. Unlike the independent counsel at issue in *Morrison*, whose jurisdiction was limited to a single case, an ALJ has jurisdiction under the Act over various proceedings in a whole category of cases relating to the termination of funds. *Id.* at 672. An ALJ's tenure, unlike that of the independent counsel, is not limited in duration. *Id.*[11] And although both an ALJ and an independent counsel are bound to follow agency regulations, *id.*, the ALJ would have a much greater opportunity than the independent counsel to effectively "formulate" policy. By deciding a series of cases, the ALJ presumably would develop interpretations of the statute and regulations and fill statutory and regulatory interstices comprehensively with his own policy judgments. Given these characteristics of the office, and that the ALJs are appointed not by the President but by the department head, interpretation of section 22 to insulate ALJ decisions from review by the Secretary would raise serious questions under the Appointments Clause.

The foreclosure of secretarial review would also be constitutionally suspect under Article II because all executive power (other than purely ministerial authority)[12] must ultimately be subject to Presidential control. Article II provides that the executive power "shall be vested in a President of the United States of America," U.S. Const. art. II, § 1, cl. 1, who alone is responsible to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3, cl. 4.[13] These constitutional provisions generally require that the

---

[11] Like the independent counsel, an ALJ is removable by another official in the executive branch, 487 U.S. at 671, but, unlike the independent counsel, an ALJ has the additional tenure protection of a preremoval hearing. 5 U.S.C. § 7521.

[12] *See, e.g., Kendall v. United States ex rel. Stokes.* 37 U.S. (12 Pet.) 524, 610-11 (1838); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803).

[13] A unitary executive branch was the considered and deliberate choice of the Framers of the Constitution. This is evident in contemporaneous exposition of the Constitution during the ratification period, *e.g.*, The Federalist No. 70, at 354-61 (A. Hamilton) (G. Wills ed. 1982); 2 Elliot's Debates 480 (2d ed. 1836) (statement of James Wilson at Pennsylvania ratifying convention), in the contrast between Article II and Article III, in which the judicial power is vested "in one Supreme Court, *and in such inferior Courts as the Congress may from time to time ordain and establish*," U.S. Const. art. III, § 1 (emphasis added), and in the contrast between Article II and the Article I legislative bicameralism.

14

President, either personally or indirectly through other executive officers, be able to direct and countermand actions of subordinate executive officials that entail the exercise of significant executive power. *Myers v. United States*, 272 U.S. 52, 163-64 (1926); *cf. Bowsher v. Synar*, 478 U.S. 714, 721-34 (1986); *see generally Morrison v. Olson*, 487 U.S. 654, 691-93 (1988).

The duties of ALJs under section 22 are generally executive in nature, because the ALJs determine, on a case-by-case basis, the policy of an executive branch agency for the administration of a federal program. *See Bowsher v. Synar*, 478 U.S. 714, 732-33 (1986); *Buckley v. Valeo*, 424 U.S. 1, 138 (1976); *Murray's Lessee v. Hoboken Land and Improvement Co.*, 59 U.S. (18 How.) 272, 279, 284-85 (1855); *cf. Heckler v. Chaney*, 470 U.S. 821 (1985).[14] If section 22 were construed so that these decisions were the conclusive determinations of an executive branch department, serious constitutional questions would be presented, given the restrictions on ALJ removal. ALJs can be removed by their agencies only after the Merit Systems Protection Board holds a hearing and finds cause for removal. 5 U.S.C. § 7521. *See generally* 5 C.F.R. §§ 930.201-930.216. The members of the Merit Systems Protection Board are in turn protected by removal restrictions during their seven-year terms. 5 U.S.C. § 1202(a), (d). ALJs are thus doubly insulated from meaningful executive control. *Cf. Bowsher*, 478 U.S. at 726. A conclusion that their exercise of executive power is not subject to review by any other executive branch official would therefore clearly be problematic under Article II.[15]

Although the Supreme Court upheld the statute at issue in *Morrison v. Olson*, which granted significant executive authority to an executive branch official protected by a "for cause" removal restriction, we do not believe that the existence of "for cause" removal authority over ALJs granted unreviewable discretion would be sufficient to save the statute from constitutional infirmity. In *Morrison*, the Court embraced the principle that the President's constitutional duty to take care that the laws be faithfully executed requires some power to control or supervise subordinates, generally including the power to remove them from their posts. 487 U.S. at 689-93, 696. The Court simply reasoned that this general principle was not violated by a "for cause"

---

[14] The functions of ALJs under section 22 can also be understood as "quasi-judicial" in nature. *Cf. Wiener v. United States*, 357 U.S. 349 (1958); *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). But as *Morrison* makes clear, the mere characterization of a power exercised by executive branch officials as "quasi-judicial" does not affect the primary issue of whether removal restrictions interfere with the President's discharge of his constitutional duty to take care that the laws be faithfully executed 487 U S at 689-90.

[15] *Butterworth v. United States ex rel. Hoe*, 112 U.S 50 (1884), is not to the contrary. In *Butterworth*, certain decisions of the Commissioner of Patents were held not to be reviewable by the Secretary of the Interior. However, the Commissioner of Patents was, as a practical matter, the head of a separate executive department, with the Secretary of Interior merely performing a "ministerial" act in signing patent registrations. Thus, *Butterworth* does not address squarely the question of the President's constitutional powers over subordinate executive officers. There is, moreover, no suggestion in *Butterworth* that the Commissioner of Patents was not subject to presidential control through removal.

removal restriction in the highly unusual circumstances of the "independent counsel," where Congress perceived an inherent conflict between an unlimited power of removal and the independence necessary for the counsel to investigate and prosecute high executive branch officials. *Id.* at 692-93. There simply is no similar conflict between an ALJ's discharge of his particular responsibilities and the existence of an "at will" removal authority.

Two factors relied on by the Court in *Morrison* to sustain the "independent counsel" statute suggest that section 22, if interpreted to prevent review of ALJ determinations by higher executive officers, might well unconstitutionally intrude upon executive power. First, the Court in *Morrison* emphasized that the Attorney General's initial decision whether to apply for the appointment of an independent counsel was committed to his unreviewable discretion, thus "giv[ing] the Executive a degree of control over the power to initiate an investigation by the independent counsel." *Id.* at 696. Here, by contrast, ALJs are assigned to section 22 cases by operation of statute, at the behest of local education agencies or institutions of higher education aggrieved by the Secretary's decision, and not by the Secretary.[16]

Second, the Court in *Morrison* emphasized both the limited tenure of an independent counsel, whose appointment ends with the completion of the particular investigation for which he is appointed, and the statutory requirement that an independent counsel generally follow policy guidelines established by the Department of Justice. 487 U.S. at 671-72. In contrast to an independent counsel, ALJs are civil service employees who may continue in their posts indefinitely, unless removed for cause. Furthermore, if ALJ decisions with respect to section 22 claims are unreviewable, the aggregate of those decisions over time effectively will establish the policy of the Department. The combined effect of tenure protection and the unreviewability of decisions substantially deprives the President of control over a particular set of policy decisions made by an executive branch Department, and thereby impairs his ability to perform his constitutional duty to take care that the laws be faithfully executed. *Cf. Morrison*, 487 U.S. at 691 (noting that independent counsel "lack[s] policymaking or significant administrative authority").

In sum, even if Congress' intent were less clear than it is from the statutory text, we would likely still adopt the interpretation of section 22 that we do because of the two quite serious constitutional questions that would attend the contrary interpretation of the section.

---

[16] Officers of "independent agencies" may also be distinguished from ALJs empowered to make unreviewable decisions, on the basis of the degree of control possessed by the President at the appointment stage. Action by an independent agency official may be reviewed by the head of the agency or by commissioners acting collectively as the head of the agency, who, although they may possess tenure protections, are appointed by the President with the advice and consent of the Senate. The appointment power thus gives the President a measure of control over the actions of independent agencies.

## IV.

It follows from the conclusion that ALJ decisions are final under section 22 only for purposes of judicial review that an aggrieved party can seek judicial review upon receipt of the ALJ's decision, whether or not there are further proceedings before the Secretary. Indeed, the fairest inference to be drawn given the well-understood practice under the APA — where the existence of "final agency action" permits immediate judicial review — is that Congress intended precisely this result when it mandated that decisions of the ALJs "shall be considered to be a final agency action." Thus, section 22 constitutes the express exception contemplated in 5 U.S.C. § 704 to the general permissibility of a requirement of exhaustion of administrative remedies. *See supra* note 4.

This reading gives meaning to the relevant language of section 22. It also furthers an apparent purpose of the Act to assure speedy resolutions by the agency, a purpose reflected, for example, in the requirement that a hearing be held within 45 days of the filing of the appeal, unless the ALJ extends the time on motion of the local education agency or institution of higher education. 20 U.S.C. §§ 1145g(d), 3224a(e). The aggrieved party may proceed immediately into court upon issuance of the ALJ's decision even if the Secretary intends to review the ALJ's decision.

## CONCLUSION

We conclude for the reasons stated that section 22 does not preclude the Secretary from reviewing decisions by ALJs. The clear import of the language in section 22 that an ALJ's decision "shall be considered to be a final agency action," given the consistent practice under the APA, is that the ALJ's decision is final for the purposes of permitting judicial review. We further conclude that section 22 deprives the Secretary of power to require exhaustion of the secretarial review procedures before an aggrieved party may seek judicial review.

J. MICHAEL LUTTIG
*Assistant Attorney General*
*Office of Legal Counsel*
