PIERRE LEVAL, Circuit Judge,
concurring:
In their briefing of this appeal, the parties dispute whether Congress gave the magistrate judge the power to impose the monetary sanction (with the consequence that the sanction could be overturned only on a finding of clear error or abuse of discretion) or whether Congress withheld that power (with the consequence that the magistrate judge was empowered to do no more than recommend the sanction, subject to de novo confirmation by the district court). That question is not clearly answered by any statute or rule, and has generated considerable discussion among the members of this panel. Judge Cabranes has vigorously asserted that the magistrate judge was authorized by law only to recommend, and not to impose, the sanction. I was initially not persuaded by Judge Cabranes’s reasons, and on deeper digging find that I disagree with his conclusion. In the end, the question is mooted for this appeal because we overturn the sanctions on a different basis. We are all in agreement, as Judge Cabranes explains in his opinion for the court, that the sanction must be vacated because there was no adequate basis in counsel’s conduct to justify its imposition.
Because we decide this appeal on a different basis, we could simply ignore the mooted question, burying our considerable research and analysis. On the other hand, some day a court may need to decide the question. Especially because the question has proved more complex than superficial *91 inspection suggests, and because many of the significant points require an understanding of the gradual evolution of the existing statute and the interpretive authorities, and the gradual growth of magistrate judge power, publication of our conflicting views may be helpful to whatever court eventually needs to decide that question. Accordingly, I set forth my view of the question, and Judge Cabranes sets forth his, for whatever benefit the airing of our debate may confer if and when the question need be resolved.[1]
A.
The question we face is whether, in enacting the Federal Magistrate Judge Act, 28 U.S.C. § 631 et seq., Congress authorized magistrate judges to impose sanctions for violations of the Federal Rules of Civil Procedure. The Act does not provide a direct answer. Accordingly, it is necessary to search its provisions to determine what, if anything, they reveal about Congress’s intentions. The task is complicated by the fact that Congress amended the Act over time, most significantly in 2000, to implement an important Congressional reappraisal of the stature and powers of Magistrate Judges. See Federal Courts Improvement Act of 2000, Pub.L. 106-518, § 202, 114 Stat. 2410, 2412-13 (2000) (addressing “Magistrate Judge Contempt Authority”).
The section of the Act specifying the powers of magistrate judges is § 636. Section 636(b)(1)(A) broadly empowers magistrate judges to “hear and determine” any pretrial matter designated to them by the district court, with the exception of a specified list of matters.[2] As for the matters falling within this excepted list, the extent of the magistrate judge’s powers is to take evidence and submit recommendations to the district court. See 28 U.S.C. § 636(b)(1)(B). The matters explicitly excluded by the Act from the magistrate judges’ power to hear and determine are motions seeking judgment on the pleadings, summary judgment, dismissal of criminal charges, authority to maintain an action on behalf of a class, dismissal for failure to state a claim, and involuntary dismissal of an action (all of these being motions that would dispose of a litigant’s claims), as well as motions for injunctive relief and to suppress evidence in a criminal case. Id. § 636(b)(1)(A). Section 636(b)(3) then adds a catchall provision that magistrate judges may be assigned “such additional duties as are not inconsistent with the Constitution and laws of the United States.”
The list of matters excluded from magistrate judges’ broadly stated power to hear and determine does not mention the imposition of sanctions. Nor is the imposition of sanctions prohibited to magistrate judges by any other provision of law. A literal reading of the Act would thus corn *92 pel the conclusion that magistrate judges are empowered to impose sanctions.
Courts, however, have not read the list of exclusions literally. Where the exercise of an unmentioned judicial power would be so similar in character to the powers statutorily withheld from magistrate judges that it would be difficult to understand why Congress would have drawn a distinction, courts have generally ruled that Congress intended also to withhold the unmentioned power. See Williams v. Beemiller, Inc., 527 F.3d 259, 265 (2d Cir.2008) (noting that the list of exclusions in § 636(b)(1)(A) is “non-exhaustive”). Because many of the powers withheld from magistrate judges by § 636(b)(1)(A) involve the determination of the suit or of a claim or of a party’s right to maintain the claim in the action, courts have generally concluded that other rulings which would have the same effect of disposing of a party’s claim (or of a defense) were also intended by Congress to be excluded from the powers of magistrate judges. Courts sometimes therefore employ an imprecise shorthand, referring to the rulings over which magistrate judges are granted authority as “nondispositive” of a party’s claims, and to rulings in the class withheld as “dispositive” of a party’s claims. See Gomez v. United States, 490 U.S. 858, 868, 873-74, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); Williams, 527 F.3d at 264-65.[3]
Within this framework, courts have decided that, in addition to the powers explicitly withheld from magistrate judges by § 636(b)(1)(A), the power of magistrate judges to “determine” does not extend to rulings that remand a case to state court, Williams, 527 F.3d at 266, that enter default judgment, Callier v. Gray, 167 F.3d 977, 981 (6th Cir.1999), that deny a motion to certify a district court order for interlocutory appeal, Vitols v. Citizens Banking Co., 984 F.2d 168, 169-70 (6th Cir.1993), that deny enforcement of an agency subpoena, N.L.R.B. v. Frazier, 966 F.2d 812, 818 (3d Cir.1992), and that deny a motion to proceed in forma pauperis, Woods v. Dahlberg, 894 F.2d 187, 187 (6th Cir.1990).
In Gomez v. United States, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the Supreme Court, departing still further from a literal reading of the statute, ruled that the selection of the jury in a criminal case, which is not listed among the functions a magistrate judge is not authorized to perform, and which is not “dispositive” of a party’s claim, is nonetheless not within a magistrate judge’s powers. Id. at 875-76, 109 S.Ct. 2237. The Court approached the question by tracing the history of Con *93 gress’s incremental increases in the powers of these officers through a series of statutory amendments (while gradually upgrading their titular designation from Commissioner, to Magistrate, to Magistrate Judge). Id. at 865-71, 109 S.Ct. 2237. The Court noted Congress’s gradually increasing confidence in magistrate judges, and it then asked whether these indicia of Congress’s confidence were sufficient to support the conclusion that Congress intended its general grant of authority to include jury selection in a criminal case. Id. at 869-72, 109 S.Ct. 2237. Noting that Congress continued to require consent of the parties as a prerequisite to a magistrate judge’s authorization to try jury cases, see id. at 870-71, 109 S.Ct. 2237, and that jury selection was enormously important for the conduct of a fair criminal trial, see id. at 873,109 S.Ct. 2237, the Court concluded that § 636 should not be construed to authorize magistrate judges to select juries in criminal trials, at least absent the consent of the defendant, id. at 872, 109 S.Ct. 2237.
According to this approach, it becomes pertinent to inspect Congress’s amendments to the Act over time to see what light they shed on changes in Congress’s confidence in magistrate judges as reflected in increasing duties and powers entrusted to them by the Act. The provisions most likely to reveal Congress’s intentions with respect to the sanctioning power are those portions of the Act that define the powers of magistrate judges to impose other disciplinary and coercive remedies for misbehavior. The most relevant provision is subsection (e), 28 U.S.C. § 636(e), dealing with the contempt power. Prior to 2000, § 636(e) expressly withheld from magistrate judges the power to impose contempts. Upon the occurrence of contumacious conduct, the statute provided that magistrate judges were to certify the facts to a district judge, who would then hear the evidence and determine whether to punish the eontemnor.[4]
In 2000, however, in a new enactment captioned, “Magistrate Judge Contempt Authority,” Congress repealed the old subsection (e), replacing it with a new subsection (e), which grants magistrate judges considerable independent authority over *94 contempt adjudications, both criminal and civil, as follows:
• A new subparagraph (2) to § 636(e), captioned “Summary criminal contempt authority,” gave magistrate judges “the power to punish summarily by fine or imprisonment, or both, such contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge’s presence.”
• A new subparagraph (3), captioned “Additional criminal contempt authority in civil consent and misdemeanor cases,” gave magistrate judges the power “upon notice and hearing” to “punish, by fine or imprisonment, or both, criminal contempt constituting disobedience or resistance to the magistrate judge’s lawful writ, process, ... or command,” in all civil cases over which the magistrate judge presides with the consent of the parties under § 636(c), and misdemeanor criminal cases heard by magistrate judges with the consent of the defendant under 18 U.S.C. § 3401.
• A new subparagraph (4), captioned “Civil contempt authority in civil consent and misdemeanor cases,” gave magistrate judges the full coercive “civil contempt authority of the district court” in the same categories of cases covered by subparagraph (3).
• For all criminal contempt adjudications, a new subparagraph (5) gave magistrate judges sentencing authority within the range specified by the code for Class C misdemeanors (imprisonment for up to thirty days, or a fine of up to $5,000, or both, see 18 U.S.C. §§ 3581(b)(8), 3571(b)(6)).
• Finally, and highly significant for our purposes, in the statute’s only reference to the question of the authority of magistrate judges to impose sanctions under the Federal Rules, the new § 636(e)(4) expressly stated that its grant of civil contempt authority in consent cases “shall not be construed to limit the authority of a magistrate judge to order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal Rules of Criminal Procedure.” While these words do not explicitly confer on magistrate judges the power to impose sanctions, they seem to express Congress’s understanding that magistrate judges possess that power. This passage says, in effect, “The fact that we expressly confer civil contempt power on magistrate judges should not be taken to imply that they lack the power to impose sanctions.”
See Federal Courts Improvement Act of 2000, Pub.L. 106-518 § 202, codified at 28 U.S.C. § 636(e).
In short, in passing the 2000 amendments, Congress expressed a very much enhanced trust in magistrate judges, granting them considerable punitive powers, which had previously been absolutely withheld. To be sure, the contempt power conferred on them is not the full power possessed by a district judge appointed under Article III. Subparagraph (5) of the new § 636(e) imposes limits on the extent of punishment a magistrate judge may impose for contempt, and the magistrate judge’s contempt power extends to con-tempts committed outside the presence of the magistrate judge only in cases where the parties to the litigation have consented to disposition of the case by the magistrate judge. Nonetheless, under the new enactment, magistrate judges were for the first time entrusted with the power to impose criminal convictions for contempt and to punish contempts by a term of imprisonment — a power considerably more awesome than the power to impose a noncrimi *95 nal sanction for violation of the Federal Rules — as well as the power in some circumstances to coerce compliance with a judicial order by a civil contempt order.
Prior to Congress’s 2000 amendments, there were reasonable arguments on both sides of the question. A strong argument against finding sanctioning power in the statute would have been that, notwithstanding the literal terms of the statute, Congress staked out a strong stance against the exercise of similar powers by magistrate judges. Congress categorically refused to allow magistrate judges to exercise contempt powers. Even though a sanction is far less consequential punishment than a holding in contempt, which can involve a criminal conviction and imprisonment (either punitive or coercive), the similarities between the two forms of order are great. The Supreme Court has, in fact, expressly noted the similarities. See Cooler & Gell v. Hartmarx Corp., 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Both sanctions and criminal contempts are judicial orders, collateral to the adjudication of the claims and defenses of the parties, which are intended to punish misconduct committed in defiance of the court’s authority by a person who is subject to the court’s ruling; both can also be employed to compensate the victim of the misconduct for expense and loss suffered by reason of it. Sanctions also have much in common with civil contempt orders, as the sanction can be imposed to compel compliance with judicial commands after intransigent refusal to comply. The similarities between orders of sanction and of contempt are so substantial that a sanction imposed under the Federal Rules of Civil Procedure can be viewed as a lighter, less consequential form of the same general species as a holding in contempt. The approach taken by numerous courts, reasoning by analogy, to find that certain powers were withheld by Congress from magistrate judges when they had enough in common with explicitly withheld powers, might well have suggested that the pre2000 version of the Act implicitly denied sanctioning power. Thus, the Sixth Circuit, when it considered the question in 1992, concluded that magistrate judges are not empowered to impose sanctions, and gave as one of its reasons that “Congress specifically withheld from magistrate judges jurisdiction over contempt proceedings.” Bennett v. Gen. Caster Serv. of N. Gordon Co., 976 F.2d 995, 998 n. 7 (6th Cir.1992).
The opposing argument — that the sanctioning power was conferred by Congress pre-20000 — would have relied on the literal terms of the statute. Section 636(b)(1)(A) granted broad powers, except as specifically excluded. The express exclusions did not mention sanctions. Moreover, the most commonly imposed forms of sanctions do not dispose of any underlying claims. A sanction that does not dispose of a litigant’s claim or defense is arguably not so similar to the express exclusions of § 636(b)(1)(A) that it should be deemed excluded by implication. Thus, this circuit ruled in 1990 that magistrate judges had the power to impose a sanction for discovery violations under Rule 37 of the Federal Rules of Civil Procedure, so long as the particular sanction did not determine a claim. See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir.1990).[5]
Seven circuits passed on the question whether magistrate judges were empow *96 ered to impose sanctions prior to the 2000 amendments. Five of the seven, including our own, concluded that magistrate judges were authorized to impose sanctions (so long as the particular form of sanction, such as a sanction of dismissal of a claim, did not effectively dispose of a party’s claim or defense).[6] Two circuits concluded they were not so authorized.[7]
In any event, regardless of how the pre2000 Act should have been construed, after Congress amended the statute to expressly confer on magistrate judges a range of contempt powers, little or nothing remained of the argument that the amended statute should be construed by implication to withhold the power to impose a monetary sanction. A literal reading of the statute, with its broad authorizations, limited by explicit exclusions, communicates no suggestion of denial of the power to sanction under the Federal Rules. And reasoning by analogy, in the mode employed in Gomez, now tends strongly to confirm the power. Just as, prior to the 2000 amendments, Congress’s express withholding of the contempt powers from magistrate judges could support a strong argument that Congress intended also to withhold the power to sanction, the grant of contempt powers to magistrate judges in 2000 now powerfully supports the conclusion that Congress intended to confer sanctioning power. It is an a fortiori case. The power to impose a criminal conviction and a sentence of imprisonment is very substantially more awesome than the power to impose a noncriminal sanction. If Congress conferred on magistrate judges the power to impose criminal convictions for contempt, and to put contemnors in jail, why would we interpret Congress’s silence on the issue of noncriminal sanctions as an implicit denial of that power?
Nor is it correct to describe Congress’s present stance on the question as “silence.” While Congress did not explicitly *97 grant or withhold the power, it did speak on the subject. And its statement that the express grant of civil contempt authority-in consent cases “shall not be construed to limit the authority of a magistrate judge to order sanctions” communicates an understanding on the part of Congress that magistrate judges do possess that authority-
Finally, the question of the authority of magistrate judges to impose sanctions under the Federal Rules of Civil Procedure scarcely seems open in this circuit. As noted above, we held in Hoar that imposition of a monetary sanction — that is, a sanction that does not dispose of a party’s claim or defense — is a “nondispositive” matter and is therefore “committed to the discretion of the magistrate [judge], reviewable by the district court under the ‘clearly erroneous or contrary to law[1] standard.” Hoar, 900 F.2d at 525.
It is of course true that the sanction imposed in Hoar was by reason of discovery abuse and was done under Rule 37, rather than Rule 11, but that is a distinction without a difference. The crucial question is whether the imposition of a sanction that does not dispose of a party’s claim or defense (such as a monetary sanction) should be considered more nearly analogous to the “dispositive” orders Congress expressly withheld from magistrate judges or to the punitive and coercive power Congress expressly granted to magistrate judges in the new § 636(e). A monetary sanction — i.e., one that does not dispose of a party’s claim or defense — is no more and no less similar to the dispositive rulings withheld by § 636(b)(1)(A) from magistrate judges whether it was imposed by reason of an abuse of a discovery obligation or an abuse of an obligation imposed by Rule ll.[8] I do not see how we in the Second Circuit could justify ruling today that a monetary sanction for abuse of Rule 11 is dispositive, and therefore beyond the authority of magistrate judges, without disavowing our prior holding in Hoar that magistrate judges are empowered to impose a monetary sanction.
I note that the analysis should be different for a sanction which does, in fact, dismiss a suit or prevent a claim or defense from being advanced. See Hoar, 900 F.2d at 525 (“[T]he imposition of certain sanctions under Rule 37, in some instances, may be considered ‘case-dispositive,’ requiring de novo review.” (citing 7 Moore, Lucas & Sinclair, Jr., Moore’s Federal Practice ¶ 72.03, at 72-24 (2d ed.1989))). In such circumstances, the sanction would have the same effect as the rulings expressly excluded by § 636(b)(1)(A), or would be so similar to those rulings as to be implicitly excluded. See Ocelot Oil, 847 F.2d at 1462 (noting that magistrate judges are generally authorized to impose Rule 37 sanctions, but ruling that a sanction striking pleadings with prejudice effectively constitutes involuntary dismissal of action and is therefore implicitly excluded by § 636(b)(1)(A)). Analyzing the effects of the particular sanction imposed by a magistrate judge, to determine whether it is dispositive or nondispositive of a claim, is the approach that best implements Congress’s intent. See 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3068.2, at 342 (3d ed.1997) (advocating a “textured view” of § 636, which “requires the court to go beyond the label and consider the impact of the action taken *98 on the case to determine whether it is dispositive”).
I conclude that, while reasonable arguments could have been advanced on both sides of the question prior to 2000, when the governing statute was truly silent on the question of the authority of magistrate judges to impose sanctions, since Congress passed the 2000 amendments, all indications very strongly support the conclusion that, with the exception of a sanction in a form that disposes of a claim or defense, § 636 empowers magistrate judges to impose sanctions. Furthermore, since we decided in Hoar in 1990 that monetary sanctions are not dispositive and are therefore entrusted to magistrate judges by § 636(b)(1)(A), the question has been resolved for purposes of this circuit’s law. Certainly no change in the governing legislation since our decision in Hoar could support the conclusion that Congress withdrew that power.
B.
I turn to examine Judge Cabranes’s arguments to see how it can be that, upon examination of the same materials, we come to such different conclusions. Judge Cabranes advances numerous arguments in support of his conclusion that magistrate judges lack power to impose sanctions. In my view, each of his arguments depends on a misperception of the facts or of various rules of law.
Judge Cabranes begins by noting that the “Sixth and Seventh Circuits [in Bennett v. General Caster Service of N. Gordon Co., 976 F.2d 995, and Alpern v. Lieb, 38 F.3d 933,] have held that decisions on Rule 11 motions are dispositive of a claim and are therefore not properly resolved by order of a magistrate judge.” Ante at 85. He goes on to describe those decisions. In both cases, the courts concluded that an award of sanctions shares features in common with an award of monetary damages, a power withheld from magistrate judges by § 636(b)(1)(A). The Sixth Circuit in Bennett also noted that magistrate judges were expressly forbidden from exercising the contempt power. There are numerous reasons why citation to those decisions, made in 1992 and 1994, cannot properly govern our analysis of the question today.
The most important reason is that Bennett and Alpern were decided under the old statute, before Congress amended it by granting magistrate judges significant contempt powers which it had previously withheld, and before Congress stated in § 636(e)(4) that the express grant of civil contempt powers “shall not be construed to limit the authority of a magistrate judge to order sanctions.” At that time, the statute was opaque as to whether magistrate judges could impose sanctions. In the absence of any clear Congressional guidance, the Bennett and Alpem courts searched for analogies to powers expressly granted or withheld. Sanctions were more nearly analogous to awards of money damages (which were not authorized to magistrate judges in referrals under § 636(b)(1)(A)) than to any power magistrate judges were authorized at the time to exercise. And the Bennett opinion further noted the analogy to contempt, which Congress also had expressly withheld.
Today, however, following the revision in 2000, the pertinent analogies are very substantially changed. There is little reason to believe the Sixth and Seventh Circuits would reach the same result if they considered the question anew under the amended statute. In the first place, the statute is no longer opaque, much less silent; Congress’s new observation in § 636(e)(4) powerfully suggests that Congress intends magistrate judges to exercise sanctioning power. The very reasons *99 that persuaded the Sixth and Seventh Circuits that the imposition of a sanction should be considered dispositive apply equally to contempts, which Congress has now (within limits) clearly placed in the nondispositive, authorized category. Finally, the similarity between sanctions and contempts is far stronger, for reasons further explained below, than the similarity between sanctions and awards of money damages in resolution of a plaintiffs claim. At the time of the Sixth and Seventh Circuit decisions, the analogy to both con-tempts and awards of damages argued in favor of the conclusion that Congress had withheld the sanction power. Now the much stronger analogy — the similarity to contempt adjudications — forcefully argues, indeed as an a fortiori case, that Congress intends magistrate judges to exercise sanctioning power.[9]
A further problem with Judge Cabranes’s focus on the Sixth and Seventh Circuit decisions in Bennett and Alpem is that his selection of those two cases is arbitrary. As noted above, seven circuits, including ours, considered whether magistrate judges were empowered under the pre-2000 statute to award sanctions. While Judge Cabranes is correct that two circuits concluded that they were not, five circuits concluded that magistrate judges did possess sanctioning power, so long as the sanction imposed was not one which disposed of a claim or defense in the underlying action.[10]
Furthermore, numerous district court decisions, which Judge Cabranes disregards, have similarly ruled that, while a magistrate judge may not impose a sanction that disposes of a claim or defense, a sanction (such as a monetary penalty) that does not do so is in the nondispositive category and is therefore within the powers conferred on a magistrate judge by § 636(b)(1)(A). See, e.g., Lawrence v. Wilder Richman Sec. Corp., 467 F.Supp.2d 228, 232-33 (D.Conn.2006); Magee v. Paul Revere Life Ins. Co., 178 F.R.D. 33, 37 (E.D.N.Y.1998); Weeks Stevedoring Co. v. Raymond Int’l Builders, Inc., 174 F.R.D. 301, 303-04 (S.D.N.Y.1997); Laser Med. Research Found, v. Aeroflot Soviet Airlines, 93 Civ 5747(PKL), 1994 WL 584665, at *2 (S.D.N.Y. Oct. 24,1994).
Judge Cabranes argues that the decisions of the five circuits, including ours, that have upheld magistrate judge authority to sanction are irrelevant because they involved imposition of sanctions under Rule 37 for misbehavior relating to discovery, while this case involves a sanction imposed under Rule 11, which relates to pleading, motions, and other papers. He contends that sanctions under Rule 37 for discovery misbehavior are completely different from sanctions under Rule 11.
Judge Cabranes thus advances the surprising proposition that Congress silently, without leaving a clue of those intentions, left us to guess that it intended to authorize magistrate judges to exercise sanctioning power under Rule 37 for abuses related to discovery, but not to exercise sanctioning power under Rule 11 for abuses relating to pleadings and motions. In explanation, Judge Cabranes writes, “[Cjoercive authority is entrusted to magistrate judges for matters within their statutory authority. That is why *100 magistrate judges have the power to impose sanctions for violations of discoveryorders____[T]he broad scope of a magistrate judge’s authority over discovery disputes ... provides the source of his authority to impose sanctions for the violation of discovery orders.” Ante at 88. There is no support for this argument in any statute, rule, or judicial opinion. If anything, it seems to demonstrate the opposite of what Judge Cabranes contends.
In the first place, the Hoar decision said nothing of the kind. It simply examined whether sanction orders should be considered “dispositive” of a party’s claim.[11] Not a word of the discussion invoked, or even mentioned, “the broad scope of a magistrate judge’s authority over discovery disputes.” [12]
The same is true of numerous other decisions of circuit and district courts upholding the authority of magistrate judges to award sanctions. No decision I have found justifies a magistrate judge’s authority to impose Rule 37 discovery sanctions on the basis of a magistrate judge’s broader authority or experience in discovery matters than in dealing with pleadings and *101 motions. These decisions look to whether the sanction imposed by the magistrate judge in fact disposes of a claim or defense (in which case it would be dispositive and beyond the magistrate judge’s authority), or whether, like a monetary sanction, it imposes a penalty or remedy that does not dispose of a claim or defense (in which case it is nondispositive and falls within the powers conferred on magistrate judges by § 636(b)(1)(A)). See 12 Wright, Miller & Marcus § 3068.2, at 342 (noting that courts have “distinguishfed] between discovery sanctions that are dispositive and those that are not”). Nor do the decisions of the Bennett and Alpem courts, which held that magistrate judges lacked the power pre-2000 to impose Rule 11 sanctions, suggest that a Rule 11 sanction is more “dispositive” than a discovery sanction, or that the authorization of magistrate judges to impose a sanction depends on whether it involved abuse of obligations relating to discovery or to the statements in pleadings, motions, and other papers. So far as I am aware, Judge Cabranes is the first and only judge to suggest that Congress might have granted to magistrate judges the authority to award sanctions under Rule 37 for abuse in connection with discovery while denying them authority to impose sanctions under Rule [13]“
Judge Cabranes’s observation that “coercive authority is entrusted to magistrate judges for matters within their statutory authority,” ante at 88, is particularly puzzling. This is scarcely an argument for denying magistrate judges sanctioning power over matters under Rule 11. If anything it demonstrates the opposite. All sorts of motions subject to Rule 11 are routinely referred by district judges to magistrate judges under the broad authority of § 636(b)(1)(A). Rule 11(b) specifies as to such a motion or answering paper that “[b]y presenting [it] to the court ... an attorney ... certifies that ... the ... legal contentions [made in it] are warranted by existing law ...; [and] the factual contentions [made in it] have evidentiary support....” And Rule 11(c) provides for sanctions for abuse of that obligation. Judge Cabranes does not contend, nor can he in the face of § 636(b)(1)(A), that magistrate judges are without “statutory authority” to handle those motions. If Judge Cabranes is correct that magistrate judges have sanctioning power “for matters within their statutory authority,” then it follows that they have sanctioning power over abuses of Rule 11(b) in connection with motions entrusted to them.
Perhaps Judge Cabranes’s principal argument is that the imposition of a sanction under Rule 11 is the “functional equivalent of an independent claim” which should therefore be considered dispositive. Ante at 88. He points out that, in a different context, “the Supreme Court has compared a motion for Rule 11 sanctions to a criminal contempt charge insofar as each is ‘a separate and independent proceeding at law that is not part of the original action.’ ” Id. (quoting Cooter & Gell, 496 *102 U.S. at 396, 110 S.Ct. 2447). He notes further that “the imposition of sanctions is an issue collateral to and independent from the underlying case,” id. (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir.1999)); that a court possesses jurisdiction to impose sanctions arising from the underlying action though it may be ultimately determined to lack subject matter jurisdiction over that action; that an imposition of sanctions is independently appealable; and that the parties to Rule 11 sanctions are often different from the parties to the underlying matter, since it is often the attorney on whom a Rule 11 sanction is imposed. Ante at 86-87.
While I have no dispute as to the accuracy of those observations, I do not understand why Judge Cabranes believes they support his argument that magistrate judges lack authority to impose sanctions under Rule 11. Each of the observations Judge Cabranes makes about the separate independence of a Rule 11 sanction from the underlying action is equally true of a sanction under Rule 37 (and Judge Cabranes does not dispute that Rule 37 sanctions are deemed nondispositive and thus within the magistrate judge’s authorized powers). Each is also equally true of a holding in contempt (and Judge Cabranes does not dispute that Congress has authorized magistrate judges to punish con-tempts).[14] While Judge Cabranes stresses that the contempt authority delegated to magistrate judges is less complete than the contempt authority of district judges, he cannot dispute that the contempt authority that Congress has explicitly given to magistrate judges shares all the features of independence from the underlying action that Judge Cabranes points to as proof that magistrate judges lack authority to impose Rule 11 sanctions. Whatever force this argument might have had prior to Congress’s amendment of § 636(e) giving magistrate judges contempt powers in a circuit where magistrate judges were deemed not to have authority to impose sanctions under Rule 37, the argument has none after the 2000 amendment in a circuit that has ruled that magistrate judges do have authority to impose sanctions under Rule 37. In short, if contempts and Rule 37 sanctions are nondispositive and within the magistrate judges’ authority, so are Rule 11 sanctions.[15]
*103 Moreover, in asserting that “a Rule 11 motion can be considered the functional equivalent of an action pressing a ‘claim’ for the breach of the duty set forth in the rule,” based on the fact that, as in “an action for damages ... the desired remedy is a monetary award to the movant,” ante at 87, Judge Cabranes overstates the degree of similarity between an action for damages and an imposition of sanctions. A significant part of the purpose of an imposition of sanctions is to vindicate the authority of the court and of the rules of law, and to punish for disrespect of that authority. Accordingly a sanction may be imposed even though not sought by an aggrieved party. See, e.g., Morley v. Ciba-Geigy Corp., 66 F.3d 21, 24-25 (2d Cir.1995) (affirming district court’s sua sponte imposition of Rule 11 sanctions). The court may impose the sanction because the court is aggrieved. Furthermore, while it is undoubtedly true that a sanction order may, and frequently does, include a monetary award to compensate an aggrieved person or party for the inconvenience and expense caused by the offender’s breach, that is not an indispensable part of a sanctioning order. Because the injury occasioning the sanction is to the court, Rule 11(c)(4) expressly provides, “The sanction may include nonmonetary directives; [or] an order to pay a penalty into court....” Thus a sanctioning order may involve a direction to pay money to the court, see, e.g., LaVigna v. WABC Television, Inc., 159 F.R.D. 432, 437 (S.D.N.Y.1995), a direction to the offender to publish the fact of the sanction, see, e.g., In re Rezulin Prods. Liability Litig., No. 00 Civ. 2843(LAK), 2005 WL 626866, at *2 (S.D.N.Y. Mar. 17, 2005); Patsy’s Brand, Inc. v. I.O.B. Realty, Inc., No. 98 Civ. 10175(JSM), 2002 WL 59434, at *10 (S.D.N.Y. Jan. 16, 2002), a direction to an attorney who demonstrates insufficient knowledge of the governing rules to attend education courses, see, e.g., LaVigna, 159 F.R.D. at 437, or a requirement that an abusive litigant seek leave of court before filing further actions, see, e.g., Colida v. Nokia Inc., No. 07 Civ. 8056(KMW), 2008 WL 4449419, at *2 (S.D.N.Y. Sept. 29, 2008).
In short, a sanction in some circumstances may have little or no resemblance to an award of money damages as the objective of a party’s civil claim, but it always has great resemblance to a holding in contempt. Moreover, to the extent that sanctioning orders do share common features with awards of damages, this is no more true of sanctions awarded under Rule 11 than of sanctions awarded under Rule 37, which we have ruled are within the authority of magistrate judges. Accordingly, the imposition of sanctions under Rule 11 is far more nearly analogous to powers granted to magistrate judges— the contempt power and the power to sanction under Rule 37 — than it is to an award of damages in a suit for damages.
Judge Cabranes’s next argument is that under “general principles of statutory interpretation,” a “presumption in favor of continuing judge-made law absent clear congressional intent otherwise” requires that we “interpret Congress’s decision in 2000 to grant only limited contempt powers as an implicit ratification of the earlier Sixth and Seventh Circuit[ ] holdings that magistrate judges do not have the authority to issue Rule 11 sanctions.” Ante at 89. I can see no reason why. As Judge Cabranes acknowledges, at the time Congress passed the 2000 amendment, there was a circuit split on the question whether magistrate judges could impose sanctions under Rule 11, with the Sixth and Seventh Circuits saying No, while the Ninth Circuit held Yes. Why would Congress’s silence on *104 this question constitute unexplained, implicit endorsement of the holdings that said No, rather than of the holding that said Yes? [16] Furthermore, since Congress gave no indication whatsoever that it sees a difference between the imposition of sanctions by magistrate judges under Rule 11 and Rule 37, if we were looking to impute to Congress approval of the holdings of courts, why would we not impute approval of the holdings of the five circuits which upheld the power of magistrate judges to impose sanctions, rather than the holdings of the two circuits that ruled otherwise? [17]
Finally, Judge Cabranes argues, as a refutation of my arguments referring to Congress’s grant of contempt authority to magistrate judges in the 2000 amendments:
We cannot bootstrap ... the minimal grant of authority to magistrate judges to punish misconduct that occurs before their eyes into a plenary power to hold litigants and attorneys in contempt or impose Rule 11 sanctions. To do so would undermine Congress’s decision to grant magistrate judges certain powers and withhold others.
Ante at 89.
This brief argument contains three substantial mistaken premises. (1) Perhaps least important, as reviewed above, Judge Cabranes understates the extent of contempt authority that Congress conferred in § 636(e). I think it undeniable that, in comparison with the prior blanket prohibition of all contempt authority, the 2000 amendments express a very significant upgrading of Congress’s confidence in magistrate judges to exercise punitive and coercive contempt powers. (2) Judge Cabranes misunderstands and misstates my argument. I have not suggested that Congress’s grant of limited authority to magistrate judges to impose contempts was converted “into plenary power to hold litigants and attorneys in contempt.” It is indisputable that the contempt authority conferred is less than plenary. Nonetheless, it is substantial. (3) Finally, Judge Cabranes asserts that acceptance of my argument would “undermine Congress’s decision to grant magistrate judges certain powers and withhold others.” This *105 argument simply assumes its conclusion. If in fact Congress had prohibited magistrate judges from imposing sanctions, and I were trying somehow to defend the contrary rule, Judge Cabranes would be correct that my argument would “undermine Congress’s decision to grant magistrate judges certain powers and withhold others.” The reason, however, that Judge Cabranes and I set forth our arguments is that Congress has not enacted a clear provision one way or the other. My arguments do not seek to “undermine” Congress’s decision. They seek to interpret Congress’s intentions in the absence of a clear congressional mandate.
In conclusion, the developments in the law during the past two decades seem to me to have removed any reasonable doubt that a magistrate judge may impose money sanctions under Rule 11, at least in a circuit such as ours where magistrate judges are authorized to impose sanctions for discovery abuse. Had we faced this question in the 1980s, when Congress withheld contempt power from magistrate judges and our court had not yet found them authorized to impose sanctions in a discovery matter, we could reasonably have resolved the question either way. Reasoning from the broad authorization of § 636, the absence of any exclusion for sanctions, and the fact that a money sanction is collateral and is not dispositive of any claim or defense in the suit, we could reasonably have concluded, as did five circuits including ours, that magistrate judges are authorized to impose money sanctions. Or, reasoning from the fact that an award of a sanction is much like a contempt adjudication, which Congress had withheld from magistrate judges, and which disposes completely of a discreet controversy, we could reasonably have concluded, as did two circuits, that Congress intended to withhold sanctioning power from magistrate judges. However, since Congress amended § 636 to expressly grant contempt powers to magistrate judges and our circuit ruled in the context of a discovery matter that magistrate judges are authorized to impose money sanctions, all that has changed. In a circuit that authorizes sanctions in the discovery context, no reasonable argument remains that magistrate judges, although expressly authorized by Congress to impose contempts and found also to be authorized to impose money sanctions for discovery abuses, nonetheless lack power to award such sanctions for abuses relating to pleadings and motions. There is no meaningful difference between sanctions relating to discovery and sanctions relating to pleadings and motions.
After much discussion in a case in which the question need not be resolved, Judge Cabranes and I have each set forth our arguments. If and when a case arises in which a court needs to decide whether Congress has given magistrate judges authority to impose sanctions, perhaps that court will find our debate helpful in answering the question. In the meantime, because the question remains undecided, district judges would be well advised to review magistrate judge orders imposing sanctions both de novo and under a deferential standard. If the district court makes clear that, regardless of whether the standard of review is deferential or de novo, it would impose the same sanction, the issue of the magistrate judge’s power will be moot, as it will be in the case in which the district court rejects the sanction on either standard. It is only in the case where the district court would uphold the sanction if review is deferential but would withhold it if review is de novo that a higher court will need to decide the question. It is altogether possible that the day requiring decision will never come.

. I agree with Judge Jacobs that amendment to the Federal Rules of Civil Procedure or the governing statute could usefully dispel interpretive disagreement as to Congress’s intention and obviate further confusion.

. Section 636(b)(1)(A) provides:
[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.
28 U.S.C. § 636(b)(1)(A).

. This shorthand is reflected in Rule 72 of the Federal Rules of Civil Procedure. Rule 72 does not undertake to specify which powers magistrate judges possess and which they do not. As the commentary to the Rule recognizes, that function is fulfilled by § 636. The function served by Rule 72 is to regulate the procedures to be followed in proceedings before magistrate judges, both for matters within the magistrate judge's power to hear and determine (which the Rule refers to as matters “not dispositive of a party's claim or defense”) and for matters withheld by § 636(b)(1)(A) (which the rule refers to as "dispositive motions”). See Fed.R.Civ.P. 72 & advisory committee’s note. It is clear this terminology is not to be taken literally. The procedures prescribed by the rule are tailored to whether the magistrate judge has authority to rule on the matter, or has authority only to recommend to the district court. As some of the powers withheld by § 636(b)(1)(A), and by interpretation of courts, do not involve disposition of a party's claim or defense, while at the same time many rulings within a magistrate judge’s powers determine something that a party is claiming, the only way to make sense of Rule 72's terminology is to construe the terms "nondispositive” and "dispositive” as distinguishing between matters upon which the magistrate judge is empowered to rule, and matters as to which the magistrate judge has the power only to recommend.

. Subsection (e), in its pre-2000 version, stated:
In a proceeding before a magistrate, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the magistrate is sitting: (1) disobedience or resistance to any lawful order, process, or writ; (2) misbehavior at a hearing or other proceeding, or so near the place thereof as to obstruct the same; (3) failure to produce, after having been ordered to do so, any pertinent document; (4) refusal to appear after having been subp[o]enaed or, upon appearing, refusal to take the oath or affirmation as a witness, or, having taken the oath or affirmation, refusal to be examined according to law; or (5) any other act or conduct which if committed before a judge of the district court would constitute contempt of such court. Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. A judge of the district court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a judge of the court, or commit such person upon the conditions applicable in the case of defiance of the process of the district court or misconduct in the presence of a judge of that court.
Federal Magistrates Act, Pub.L. No. 90-578, § 101, 82 Stat. 1107, 1113-1428 (1968), codified at 28 U.S.C. § 636(e).

. If I had been required to rule on the question under pre-2000 law (without regard to my circuit's decision in Hoar), I probably would have ruled that Congress withheld the power, by reason of Congress's emphatic withholding of all power to hold in contempt and the very strong similarity between sanctions and contempt.

. Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 6 (1st Cir.1999) ("Motions for sanctions premised on alleged discovery violations are not specifically excepted under 28 U.S.C. § 636(b)(1)(A) and, in general, they are not of the same genre as the enumerated motions. We hold, therefore, that such motions ordinarily should be classified as nondispositive.”); Hoar, 900 F.2d at 525 (2d Cir.) ("Monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate, reviewable by the district court under the 'clearly erroneous or contrary to law’ standard.”); Merritt v. Int'l Bhd. of Boilermakers, 649 F.2d 1013, 1016-17 (5th Cir.1981) (“[T]he magistrate possessed the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery ordersL in this case, fees and costs in connection with a motion to compel discovery].”); Grimes v. San Francisco, 951 F.2d 236, 240 (9th Cir.1991) ("The authority of magistrates to impose discovery sanctions is established by 28 U.S.C. § 636 and recognized by our decisions.”); Maisonville v. F2 America, Inc., 902 F.2d 746, 748 (9th Cir. 1990) ("[W]e find that the Rule 11 sanctions imposed in this case are non-dispositive. Accordingly, the magistrate had jurisdiction to order Rule 11 sanctions and the district court properly reviewed the magistrate’s order for clear error.”); Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1462 (10th Cir.1988) (“Discovery is clearly a pretrial matter, and magistrates thus have general authority to order discovery sanctions. They may not do so, however, if those sanctions fall within the eight dispositive motions excepted in subsection (A).”).

. Bennett, 976 F.2d at 998 (6th Cir.) ("[T]his purported order was dispositive of the Rule 11 matter and, consequently, dispositive of a ‘claim’ of a party. Because this was a dispositive matter, under Fed.R.Civ.P. 72(b), the magistrate judge should have issued a report and recommendation for de novo review by the district court.” (footnote omitted)); Alpern v. Lieb, 38 F.3d 933, 935 (7th Cir.1994) ("A district judge may refer a dispute about sanctions to a magistrate judge for a recommendation under § 636(b)(1)(B) or § 636(b)(3), but the magistrate judge may not make a decision with independent effect.”).

. The imposition of a sanction requiring an attorney, or a witness, or a party to pay $100, regardless of whether imposed by reason of a discovery abuse or of abuse in connection with a motion, leaves the claims of the plaintiff and the defenses of the defendant unaffected.

. Judge Jacobs describes Judge Cabranes's view as ''follow[ing] the Sixth and Seventh Circuits." Infra at 106. For the reasons explained above, it is no longer possible either to follow, or to reject, the Sixth and Seventh Circuit decisions because the statute they were interpreting has been so substantially modified.

. See decisions of the First, Second, Fifth, Ninth, and Tenth Circuits, listed in footnote 6, supra.

. The opinion focused on § 636(b)(l)(A)’s grant of authority to magistrate judges designated by the district court to hear and determine any pretrial matter "except for certain enumerated dispositive motions [as to which] he may only submit proposed findings of fact and recommendations” for determination de novo by the district court. Hoar, 900 F.2d at 525 (quotation marks omitted). Observing that "[m]atters concerning discovery generally are considered 'nondispositive,' ” the court went on to conclude that "[m]onetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate, reviewable by the district court under the 'clearly erroneous or contrary to law' standard.” Id. The entire inquiry was into whether the particular sanction imposed had the effect of disposing of a claim. The court went on to caution, citing the Moore treatise, that a sanction which, for example, strikes the pleadings with prejudice would have the effect of involuntarily dismissing the action and would thus be dispositive and accordingly beyond the magistrate judge's power. Hoar, 900 F.2d at 525.

. Judge Cabranes’s similar attempt to distinguish Maisonville, 902 F.2d 746, which upheld a magistrate judge's imposition of sanctions under Rule 11, is unpersuasive for the same reason. As Judge Cabranes explains, the ruling of the magistrate judge in Maisonville was a Rule 11 sanction for a discovery violation, and Rule 11 was amended in 1993 to exclude sanctions arising from discovery disputes. Ante at 85-86. From this, Judge Cabranes concludes that the Ninth Circuit’s decision is no longer sound, because, he implies, it rested on the fact that "discovery disputes are within the core statutory authority of magistrate judges.'' Id.
Yet the court's conclusion that the sanction imposed was nondispositive was in no way connected to the fact that it arose out of the discovery context. Like the many other courts that have ruled that magistrate judges are empowered to impose sanctions (so long as the sanction does not effectively dispose of a claim), the Ninth Circuit reasoned that the monetary sanction was within the magistrate judge’s power because it was not dispositive:
[S]ection 636(b)(1)(A) lists those motions which may not be determined by a magistrate. Accordingly, any motion not listed, nor analogous to a motion listed in this category, falls within the non-dispositive group of matters which a magistrate may determine. Rule 11 sanctions are not listed in the group of dispositive matters, nor do the sanctions imposed here have an effect similar to those motions considered dispositive.
Maisonville, 902 F.2d at 747-48 (citations omitted).
Furthermore, Judge Cabranes's attempt to discredit the continuing pertinence of Maisonville on the ground that discovery disputes are "within the core statutory authority of magistrate judges” is simply an invention without a statutory basis. If there were such a thing as "core” statutory authorization for discovery, as distinguished from peripheral statutory authorization relating to pleadings and motions, presumably some reference to the concept would be found in some statute. Judge Cabranes cites none.

. Judge Cabranes further explains that his perception "that the disposition of a Rule 11 [sanctions] motion must be made by a district judge [and not a magistrate judge] is not a disparagement of the authority of magistrate judges to preside over matters properly before them. Indeed, coercive authority is entrusted to magistrate judges for matters within their statutory authority.” Ante at 88. This observation is puzzling, for the question is not what we judges think of the competence of magistrate judges to rule in different areas, but whether Congress entrusted them with the power. Judge Cabranes does not point to anything in the statute, before or after its amendment, or in its legislative history, which suggests that Congress intended to distinguish between a magistrate judge’s authority to sanction under Rule 37 and her lack of authority to sanction under Rule 11.

. Judge Jacobs expresses puzzlement over what he sees as '‘incoherence]” in considering a sanction order sufficiently "dispositive” to be immediately appealable but sufficiently nondispositive to be within a magistrate judge's power under § 636(b). Ante at 85. Regardless of whether there is theoretical inconsistency in holding a sanction order to be at once immediately appealable and within the power of magistrate judges, an order of sanctions under Rule 11 is no different in this regard from a summary holding in criminal contempt, which Congress explicitly empowered a magistrate judge to order without de novo review by the district court, and which is also immediately appealable. See Matter of Christensen Eng'g Co., 194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072 (1904).

. Nor does this create an inconsistency with Congress's effort in § 636(b)(1)(A) to withhold from magistrate judges authority to make dis-positive determinations. The dispositive determinations listed in that clause, insofar as they relate to civil suits, are determinations of a party’s demands for relief pursuant to the claims pleaded, or of the party's right to have the claim adjudicated by the court. They do not include collateral matters relating to misconduct and the court’s vindication of its authority. There is no illogic or inconsistency in Congress's withholding of authority to determine a party's claim or the right to maintain the claim before the court, while affirming the authority to punish for misbehavior in the course of the proceedings. Every judicial ruling is determinative of something. The imposition of a sanction is a very different sort of ruling from one that determines a party’s pleaded claim (at least so long as the form of the particular sanction does not determine the party's right to continue to assert the claim).

. Judge Cabranes contends that Congress should be understood to have disregarded the Ninth Circuit’s Maisonville ruling in amending the statute because of a 1993 change in Rule 11 to exclude sanctions related to discovery. Ante at 89 n. 13. But the ruling of the Ninth Circuit did not depend on the fact that the sanction was imposed in the context of discovery. See supra note 12. Furthermore, to my knowledge, this criticism of Maisonville has never before been advanced by any court or commentator, and Maisonville is still good law in the Ninth Circuit. See, e.g., United States v. Rivera-Gueirero, 377 F.3d 1064, 1067-69 (9th Cir.2004) (analyzing a question of magistrate judge's authority "under Maisonville ”); see also Watson v. Maxwell, 142 F.3d 447, 1999 WL 228223, at *1 n. 1 (9th Cir. Apr. 28, 1998) (unpublished) (affirming Rule 11 sanctions imposed by magistrate judge, citing Maisonville). It would be extremely odd if, in 2000, Congress silently deemed Maisonville overruled on a ground advanced for the first time today by Judge Cabranes, and in the face of the Ninth Circuit's continued reliance on the precedent.

. Moreover, it is not as if the imputation would arise from Congressional silence. As noted above, in passing the 2000 amendments, Congress stated in the new § 636(e)(4) that its decision to confer civil contempt authority on magistrate judges in certain classes of cases "should not be construed to limit the authority of a magistrate judge to order sanctions.” Judge Cabranes’s suggestion to impute to Congress — under "general principles of statutoiy construction” — approval of the holding of two of the seven circuits to have addressed the question would also require imputation of an intention contrary to the intention Congress expressed in § 636(e)(4).

. The word “sanction” is used only in subsection (e)(4), which sets out the civil contempt authority of magistrate judges in consent cases and then states: "This paragraph shall not be construed to limit the authority of a magistrate judge to order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal Rules of Criminal Procedure.” 28 U.S.C. § 636(e)(4).